[No. 24485.   Department Two.   August 3, 1933.]

LYLE A. KING, *Respondent*, v. KARL BREHME *et al.,*
*Appellants.*[1]

*Bayley & Croson* and *F. B. Fite, Jr.,* for appellant.
*Elmon Adams Geneste,* for respondent.

BLAKE, J.—The plaintiff brought this action to re-
cover $320 as commissions for services rendered to
defendants in the purchase of thirty-two head of dairy
stock.   The plaintiff's complaint sets up two causes of
action on express contract.   In the first, he alleges
Brehme employed him, in October, 1930, to purchase
seventeen head of cattle, and agreed to pay him for his
services at the rate of ten dollars a head.   In the
second cause of action, he alleges Brehme, in Novem-
ber, 1930, employed him to purchase fifteen head of
cattle, and agreed to pay him ten dollars a head for
his services.   The defendants answered by way of gen-

[1]Reported in 24 P. (2d) 453.

eral denial. From a judgment entered on findings in favor of plaintiff, defendants appeal.

The sole question raised by the appeal is whether or not the findings are supported by the evidence.

A case of this character, where witnesses for the respective parties tell stories which are diametrically opposed, always presents a difficult problem to a trial court, and a more difficult problem for an appellate court. Recognizing such difficulty, this court has long adhered to the rule that it will not disturb the judgment unless the evidence clearly preponderates against the findings of the trial court. This, because the trial court has a distinct advantage in ascertaining the truth, by reason of the fact that he has the opportunity of observing the witnesses while they are testifying.

Numerically, the preponderance of the testimony in this case is in favor of appellants, but we cannot say, for that reason, the weight of the evidence is against the findings, since none' of the testimony comes from the lips of disinterested witnesses. On the other hand, there are certain silent witnesses which quite emphatically support the findings.

The first of these is a somewhat undefinable disingenuousness pervading the entire testimony of Karl Brehme. It is something difficult to translate into words, but it is apparent even in the written record. It must have been much more apparent as the testimony came from his lips. Mr. Brehme is a man of large property, held and operated in the names of various corporations. He owns a summer home on Orcas Island, the legal title to which is held by a corporation called "Arcadia, Inc." He owns a dairy ranch near Elmira, California. This is incorporated under the name of "Vaca Rancho." He owns another dairy ranch at Hollister, California, which is incor-

porated under the name of "Western Ranches." Finally, we come to a holding company called the "International Corporation."

One cannot read the testimony of Mr. Brehme without being convinced that these were all family corporations. Mr. Brehme expressly declared that he was the owner of Vaca Rancho and Western Ranches. He testified that the capital stock of Vaca Rancho was owned by International Corporation, and that he held fifty per cent of the International interest. On cross-examination, he testified he did not know how many shares of International Corporation he owned. He was president of Vaca Rancho and Western Ranches. His nephew, Walter Brehme, was manager, vice-president and director of Vaca Rancho and a director of Western Ranches. Appellant's niece, Mrs. Orcutt, was secretary of Vaca Rancho. When asked if Walter Brehme had ever worked for him on the Orcas Island estate, appellant testified: "He never worked for me. Q. Did he work for Arcadia? A. For Arcadia, Inc."

The evidence of appellants presents two theories: First, that respondent agreed to purchase the dairy stock without charging commissions for his services; and second, that the two bunches of stock were purchased for Vaca Rancho and Western Ranches, respectively; that Brehme was acting as agent for the corporations, and therefore the corporations, not he, were liable for the commissions, if any were due.

Appellant took out an insurance policy in his own name on the first bunch of stock. Both bunches were purchased from various farmers in the San Juan Islands. Brehme had respondent pay for the first, and arranged funds for that purpose in the San Juan County Bank. He created an account in favor of Arcadia, Inc., in the amount of twenty-five hundred dollars. This was made up by his personal check of

one thousand dollars and a sixty-day draft drawn on Vaca Rancho.

From these facts and the testimony of Brehme himself, we are satisfied that whatever contract was made with respondent relative to commissions was, in fact and law, the contract of Karl Brehme. *Platt v. Bradner Co.*, 131 Wash. 573, 230 Pac. 633; *Associated Oil Co. v. Seiberling Rubber Co.*, 172 Wash. 204, 19 P. (2d) 940.

We have already stated there is no direct testimony of a disinterested witness as to whether a contract to pay commissions was entered into. There are inferences and probabilities to be gleaned from the record in support of both sides. It will serve no useful purpose to weigh them here. There is one bit of testimony of a disinterested witness worthy to be mentioned, however, and which, we think, swings the balance against appellants. Prior to purchasing the first bunch of stock, Mr. Brehme consulted C. J. Sandwith, a veterinarian, in contemplation of having them examined before shipment. Sandwith testified that, in the course of the conversation, Brehme discussed the method of purchasing the stock, namely, through King; that Brehme then, in substance, asked Sandwith which he thought would be the cheaper method of acquiring the stock—to purchase them himself direct from the farmers, or *hire* King to purchase them.

We think the evidence supports the findings. The judgment, therefore, will be affirmed.

BEALS, C. J., TOLMAN, STEINERT, and MAIN, JJ., concur.