[No. 24655. Department Two. November 27, 1933.]

SEARS ROEBUCK & COMPANY, *Appellant*, v. ANTON J. NILSEN, *as Executor, et al., Respondents.*[1]

*Neal & Bonneville,* for appellant.

*J. H. Gordon* and *E. N. Eisenhower,* for respondents.

HOLCOMB, J.—This appeal is from a judgment of dismissal after a trial on the merits to the court without a jury.

The action was brought by appellant against respondent Nilsen, as executor of Rose T. Jackson, deceased, against him individually, and his wife, Marie S. Nilsen, to recover $6,089.15, with interest, for a quantity of merchandise sold to them between March 24, 1931, and May 27, 1931, the three principal items of which were for wall beds, electric ranges and light fixtures.

The claim was served and filed against the executor for a total of $15,058.88 and interest, $8,969.73 being for merchandise sold to Nilsen and Miss Jackson, dur-

[1]Reported in 27 P. (2d) 128.

ing her life time, secured by a chattel mortgage, and the balance for merchandise sold to them for cash, or on open account. The claim was allowed by the executor for the merchandise secured by the chattel mortgage, and was rejected for that sold for cash, or on open account. There is no dispute as to the amounts of these two claims.

Respondents appeared separately in the trial below, but join in one brief on this appeal.

After other findings which are uncontested, the trial court found (4) that, on about March 11, 1931, Anton J. Nilsen, acting for himself individually and for the community consisting of himself and wife, and Rose T. Jackson, agreed to purchase from appellant, at Tacoma, a large quantity of house furnishings to furnish an apartment house in Tacoma, then known as the Parkside Apartments, which house furnishings Nilsen and Rose T. Jackson agreed to purchase, being house furnishings other than those for the purchase price of which this action is brought; (5) that, thereafter, in between March 11, 1931, and May 14, 1931, appellant sold and delivered to Nilsen and Rose T. Jackson house furnishings of the approximate value of $11,-163.32, which furnishings were other than those for the purchase price of which this action is brought, upon which Nilsen paid in cash the sum of $1,500; and to evidence the remainder of the purchase price, Nilsen and Rose T. Jackson, on May 14, 1931, executed and delivered to appellant a note in the sum of $9,663.32, and secured the same by chattel mortgage on the merchandise sold to the parties, and that the executor has, in the matter of the probate of the estate of Rose T. Jackson, duly allowed the claim of appellant for the balance due under the promissory note; that appellant did not sell any furnishings or other goods, wares or merchandise to respondents

upon credit other than that for the purchase price of which the promissory note was given, and that they are not indebted to appellant in any form other than for the balance due upon the promissory note.

Other findings were made as to the death of Miss Jackson, appointment and qualification of Nilsen as executor of her will, the allowance of the above mentioned $9,663.32 claim and rejection of the $6,089.15 and interest claim, by the executor.

In conformity with its findings, the trial court concluded that the action should be dismissed with costs. Judgment was entered accordingly.

Appellant assigns as error, first, that part of finding 4 "which said defendant and said Rose T. Jackson agreed to purchase, being house furnishings other than those for the purchase price of which this action is brought;" second, that part of finding 5 reading:

"That said plaintiff did not sell to said defendants any furnishings or other goods, wares and merchandise upon credit other than that for the purchase price of which said promissory note was given, and that said defendants are not indebted to said plaintiff, in any form other than for the balance due upon said promissory note."

Other errors are assigned upon entering the conclusion of law in favor of respondents and refusing appellant's proposed findings of fact Nos. 5 to 12, inclusive; in refusing proposed conclusions of law in favor of appellant; in entering judgment dismissing its cause of action and refusing to enter judgment in favor of appellant against respondents as prayed in its complaint. Errors are also assigned upon rejection of an exhibit consisting of an agreement between Nilsen and wife and the creditors' committee and trustees of the Home Apartment Company as to the operation of the apartment house, and in rejecting an exhibit consist-

ing of a written report by a rating bureau as to the credit rating of Nilsen and Miss Jackson.

The record has been carefully examined, principally from the statement of facts itself, as to the testimony of important witnesses.

Errors 1 to 6, inclusive, are argued collectively as involving the main question of whether the court erred in dismissing appellant's cause of action and in refusing to enter judgment in its favor. Appellant forcefully argues that the trial court drew the wrong inferences and conclusions from the evidence, and that, on all of the evidence, respondents are liable to appellant, either as partners or joint venturers.

There was a sharp conflict in the evidence between Nilsen, testifying for respondents, and two witnesses for appellant as to whether or not the sale of certain merchandise, which went into and became a part of the furnishings of the apartment house, was a sale to the corporation known as the Home Apartment Company, or a sale to respondents individually.

It does not seem useful to detail most of the facts shown by the record upon which the trial court found and concluded in favor of respondent, except to show some of the business arrangements between respondent Nilsen and Miss Jackson, and how they arose.

In the summer of 1930, one Wilson commenced the construction of the apartment house in question. He had partially financed it by a mortgage in the sum of twenty-five thousand dollars to the Tacoma Mortgage Company. Nilsen had begun its erection as a contractor under Wilson. Wilson became financially involved, and deeded the property to Nilsen and wife, who, on October 20, 1930, gave a mortgage of seventy-five thousand dollars to Spokane Eastern Trust Company to further finance the project. This mortgage, by its terms, covered certain equipment to be installed

therein, such as electric ranges, wall beds, refrigerators, etc., but did not cover the furnishings which were thereafter purchased, and which were admittedly to be paid for by Miss Jackson and Nilsen, and for the purchase of which those parties gave their note for the remainder. No advance was made at the time of the execution of the mortgage, the understanding being that the seventy-five thousand dollars was to be available only when the building was completed.

On November 10, 1930, the Home Apartment Company was organized by Nilsen for the purpose of taking title to the property, which was conveyed to it on November 18, 1930, subject to the first mortgage to the Tacoma Mortgage Company and seventy-five thousand dollars in favor of Spokane Eastern Trust Company executed by Nilsen and wife. The stock of the Home Apartment Company was all subscribed by Nilsen. E. N. Eisenhower, who acted as attorney for Nilsen during the entire transaction, and his office secretary were the officers of the corporation.

In December, 1930, Miss Jackson made an agreement with Nilsen under which she agreed to purchase 2,500 shares of the Home Apartment Company, which would represent one-half of its stock. At that time, she agreed to turn over to Eisenhower, who acted for Nilsen and the corporation and never as her attorney, contracts on real property and mortgages, to be sold and pledged for the purpose of raising twenty thousand dollars, which was to be used for the benefit of the Home Apartment Company. At the time she made the agreement with Nilsen, it was represented to her that the twenty thousand dollars, together with the seventy-five thousand dollars to be obtained from the Spokane Eastern Trust Company, would be sufficient to pay all of the obligations for the construction of the apartment house, with the exception of the furnish-

ings. Up to that time, it was believed that the total costs of the apartment house would not exceed ninety-five thousand dollars.

Before the securities thus deposited with Eisenhower had been used, it was discovered that the total cost of the apartment would exceed one hundred thirty-five thousand dollars for the building and the land, upon which discovery, and about July 1, 1931, Miss Jackson said that she "was through," and demanded from Eisenhower the securities held by him. They were accordingly returned to her in August or September, 1931.

Miss Jackson acted for a time as a manager and bookkeeper for the Home Apartment Company, and helped select whatever was put into the buildings by way of furnishings. Prior to her withdrawal from the project, on March 11, 1931, Miss Jackson and Nilsen signed a written agreement to and with appellant for the purchase of a large quantity of furnishings, a detailed list of which was also attached to the agreement, which furnishings were to be paid for by a deposit of fifteen per cent of the cash total of the order and the remainder in eighteen monthly installments, commencing thirty days after the date of the last delivery.

Within the next two months, appellant delivered merchandise of the value of $16,756.34, which bill was made up of furnishings of the value of $11,203.32, and ranges, beds and light fixtures of the value of $5,553.02. On May 14, 1931, after the deliveries were complete, Nilsen and Miss Jackson executed a promissory note in favor of appellant, at its instance, for $9,663.32 and a chattel mortgage to secure it, covering all of the house furnishings which had been purchased with the exception of the ranges, beds and electric fixtures.

After the apartment house was completed and the seventy-five thousand dollars to be advanced by the Spokane Eastern Trust Company was ready for distribution, it was discovered that the Home Apartment Company was unable to pay all of the accounts owing by it, whereupon a creditors' committee was appointed for the purpose of determining to whom and in what amounts the seventy-five thousand dollars should be paid. All of the creditors agreed to that arrangement, and appointed a representative to act as a trustee for each of them.

There are two distinct versions of the transaction as to the open account of more than five thousand dollars. Nilsen's version is that all persons concerned knew that the Spokane Eastern Trust Company had a mortgage of seventy-five thousand dollars, the proceeds of which were to be available for the payment of the obligations incurred in erecting the building; that the ranges, beds and light fixtures, when installed, were included in the seventy-five thousand dollar mortgage and would belong to the Home Apartment Company; that they were to be paid for in cash by the corporation out of the proceeds of the mortgage; that the furnishings were to be purchased by Miss Jackson and himself; that they were to secure the amount of those expenses by their note and chattel mortgage, and that the other items belonged to the corporation, which intended to pay for them. Appellant strenuously contends that all the arrangements constituted one transaction, handled in the same way, and would be paid for by the same persons.

It is very significant that appellant itself segregated the transactions, requiring security for one and not for the other.

It is apparent that, upon the conflicting testimony of Nilsen and two credit men of appellant, the trial

court could have found either way and would have been sustained by this court.

It is our well-settled rule that in an action at law where the evidence is closely conflicting, or equally balanced, and does not preponderate against the findings of the trial court, its findings will not be disturbed. *Pugh v. Doupe,* 130 Wash. 498, 228 Pac. 301; *North Pacific Public Service Co. v. Carter,* 131 Wash. 587, 230 Pac. 849; *Mielke v. Hans,* 133 Wash. 59, 233 Pac. 5.

There can be no question but that, for a time, Nilsen and Miss Jackson sustained the relations either of a joint venture or partnership; but that relation was terminated, Miss Jackson withdrew, the property was all transferred to the Home Apartment Company, and respondents contend that appellant was informed of that situation. Although appellant asserts the contrary, the trial court having had the witnesses before it and being better able to judge of their credibility than we from the cold record, we cannot disturb its finding in that respect.

Another question argued by appellant as to the Home Apartment Company being a mere shell and constituting, in fact, a partnership, of which Nilsen and Miss Jackson were the partners, is not sustained by the facts or the law. Miss Jackson withdrew from the joint venture or partnership, whichever it was, and was not associated with Nilsen or the Home Apartment Company, when she discovered that the twenty thousand dollars she had intended to invest therein would be inadequate to the extent of twenty thousand dollars or more to complete the building. That, she had a perfect moral and legal right to do. There were good legal and business reasons for forming the corporation, and no evidence that it was not organized in good faith. Cases cited by appellant, such as our re-

cent case of *King v. Brehme,* 174 Wash. 61, 24 P. (2d) 453, where several corporations were organized solely for the personal benefit of Brehme and were entirely personal and family concerns, are not applicable to the situation here presented.

Respecting the rejection of the exhibits complained of by appellant, after examining it in the record, we can see no relevancy whatever to the issues, in the agreement between Nilsen and wife and the creditors' committee of the Home Apartment Company as to the operation of the apartment house.

Regarding the written report of the rating bureau as to the credit rating of Nilsen and Miss Jackson, it would not have been binding upon either of them in any event, and was not material or relevant. However, appellant did have oral evidence in the record that it had caused to be investigated the financial worthiness of Miss Jackson and Nilsen before they extended credit, which was sufficient for that purpose.

We can find no justifiable reason for disturbing the findings or judgment.

Affirmed.

BEALS, C. J., TOLMAN, BLAKE, and GERAGHTY, JJ., concur.