[No. 28163. *En Banc.* June 10, 1941.]

J. P. McLEAN, *Respondent*, v. CONTINENTAL BAKING COMPANY *et al., Appellants.*[1]

[1]Reported in 114 P. (2d) 159.

*Eggerman & Rosling,* for appellants.

*Newell J. Banks* and *H. Sylvester Garvin,* for respondent.

STEINERT, J.—Plaintiff brought suit to recover for damages to his automobile resulting from a collision between it and a truck owned by defendant Continental Baking Company and driven by defendant John Nelson. Defendants filed an answer, which included, as part thereof, a cross-complaint by defendant baking company, and in their pleading defendants denied negligence on their part, alleged negligence on the part of plaintiff, and prayed for dismissal of plaintiff's complaint and for recovery upon the baking company's cross-complaint. The issues were tried to the court, sitting without a jury. The trial resulted in findings of fact and conclusions of law in favor of plaintiff. Judgment was entered accordingly, and defendants appealed.

The collision in question occurred on October 19, 1938, at about 9:30 a. m., in the intersection of Yale avenue north and east Boston street in the city of Seattle. Yale avenue north runs in a northerly and southerly direction, and east Boston street runs in an easterly and westerly direction. Both streets are paved, each is twenty-five feet wide, and neither of them is an arterial highway. Yale avenue north is practically level in the locality herein involved; from

the north it approaches the intersection at a downgrade of 1.2%, and, after crossing the intersection, it proceeds in a southerly direction at a downgrade of 3.3%. East Boston street, on the other hand, is on a considerable grade; it approaches the intersection from the east at a downgrade of 11.1%, and, after crossing the intersection, it proceeds in a westerly direction at a downgrade of 11.7%.

At the northeast corner of the intersection, along both streets, is a high bank which rises abruptly from a point about a foot from the inner sidewalk lines. The bank is covered with vines and overhanging shrubbery. At the northwest corner of the intersection are located the Harmon apartments, and at the southeast corner is another apartment building. The sidewalks leading to the intersection from the various directions are six feet wide, and the parking strips bordering them have a width of approximately five feet and five inches. Both streets were dry at the time of the collision.

Immediately before the accident, respondent was traveling south along Yale avenue north. At the same time, the bakery truck was proceeding in a westerly direction along east Boston street. Respondent, being on the right, was thus the favored driver. The collision occurred near the center of the intersection. The only eyewitnesses to the accident were respondent and appellant Nelson, and their respective versions not only conflicted with each other, but also contained certain discrepancies within themselves.

Respondent testified as follows: Shortly before the time of the collision, he had started, in his automobile, from his home, which was about two blocks north of the scene of the accident, and was proceeding along his customary route toward the downtown section of the city. As he approached the intersection of Yale avenue north and east Boston street, three automobiles

were parked on the right-hand side of Yale avenue north, and another automobile was parked on the left-hand side of the avenue, opposite the high bank. Of the three automobiles on the right-hand side, two were parked in front of the Harmon apartments, situated at the northwest corner of the intersection, the automobile farthest south being near the north sidewalk line of east Boston street. Because of the automobiles parked on both sides of the street, respondent was compelled to drive practically along the center line of Yale avenue north. Approaching the intersection at a speed of about fifteen miles per hour, he glanced first to his left, and "there was nothing visible coming" from that direction. He then looked to his right, and at about the same time began turning his car slightly in that direction, in order to get back onto his proper half of the street after passing the two cars parked in front of the Harmon apartments. He then looked to his left again quickly, and just as he "visioned ahead" he saw the bakery truck coming from the left and crossing directly in front of him, about ten or twelve feet away. He estimated the speed of the truck at thirty miles per hour. In an effort to avoid a collision, he swerved to his left three or four feet. His effort was not successful, however, and he struck the rear six or eight inches of the truck body. The impact occurred almost in the exact center of the intersection. As a result of the collision, the two cars were projected across the intersection to the southwest corner thereof where they came to rest, about fifty feet from each other, lying on their sides, partly on the sidewalk and partly in the street.

As to the exact point at which respondent first looked to his left, there is some discrepancy in his testimony. Upon direct examination, for instance, he testified that it was twenty-five feet "from the *entrance* of the

intersection," and later he defined "intersection" as the area within the square of the sidewalks. On cross-examination, however, he testified that the point of his first observation to the left was "about twenty-five feet from the *center* of the intersection," which, according to the map in evidence, would be twelve and one-half feet north of the curb line of east Boston street. He also testified, on cross-examination, that he first looked to his left when he was in the act of passing the two cars parked in front of the Harmon apartments; that the interval between the time when he first saw the truck and the moment of the impact was too short to enable him to estimate the speed of the truck, or its exact location with reference to the center line of east Boston street, or whether or not its speed had varied in any manner; and that, previously, in a deposition taken about five months before the trial, he had testified that both vehicles were just entering the intersection when he first saw the truck.

Appellant Nelson, the driver of the truck, testified that he had descended east Boston street, toward the intersection, with his motor under compression, and that his speed at all times was approximately fifteen miles per hour; that his truck was eighteen feet in length; that he observed respondent's automobile as soon as possible after his view to the right became unobstructed; and that, when he first observed respondent's car, it was "well over fifty feet back" of the intersection. He designated his own position at that time as being at the sidewalk line, or at a point thirty or thirty-two feet east of the center of the intersection. He further testified that respondent's speed was in excess of twenty-five miles per hour; that, as a result of his own initial observation, he concluded that he easily could cross in front of respondent because his truck had only a "couple of lengths" to go, whereas

respondent, whose automobile was about fifteen feet long, had at least three lengths to go; that he then looked to his left and ascertained that no traffic was approaching from that direction; that he thereupon looked to his right again, at which time the front one-third of his truck had passed the center line of Yale avenue north; that he then observed respondent driving directly at him, about twenty-five or thirty feet distant; that, at that time, there was still nothing to indicate that a collision was imminent, there being "plenty of time [for respondent] to slow down and go behind" the truck; and that respondent made no attempt to avoid the collision. Upon cross-examination, Nelson admitted that he, himself, had made no attempt to vary his own speed, that he did not apply his brakes at any time, and that he could have stopped before entering the intersection had he applied his brakes when he first saw respondent. Interrogated by the court, he testified:

"Q. (The court) Why didn't you stop and let him go by? A. Because I had the right of way. I had plenty of time to cross that crossing at the speed I was going. Q. (The court) What do you mean you had the right of way? A. To drive to the center of the intersection long before he was there."

Later in his examination, Nelson changed his testimony with reference to the point at which respondent's car was located at the time when he, Nelson, first saw it, and, in response to a series of questions, he then fixed the location of respondent's car as of that time variously at from seventy-five to one hundred feet north of the "intersection line," by which latter phrase he appears to have referred to the center point of the intersection.

The trial court made findings of fact to the effect that respondent, on coming to the obstructed inter-

section, looked to his left and did not see the approaching truck; that he then looked to his right to see whether or not any traffic was approaching from that direction, and, seeing none, "turned and there loomed up in front of him the bakery truck"; that respondent was in a position on the street where he had a right to be, and was driving at a legal rate of speed; that appellant Nelson observed respondent approaching on his right, and at such a distance that, if Nelson had applied his brakes, he could have stopped before reaching the middle of the intersection; and that the accident was the direct and proximate result of Nelson's negligence. From those findings, the court concluded that Nelson was negligent in failing to yield the right of way to respondent; that Nelson's negligence was the sole, proximate cause of the collision; and that respondent was not negligent in such a manner as to contribute to the accident.

Appellants assign no error on the court's finding of negligence on the part of Nelson nor on the denial of recovery upon the baking company's cross-complaint. Their sole contention upon appeal is that the trial court erred in finding that respondent was not guilty of contributory negligence. They rely upon the rules that, where the favored driver becomes aware, or in the exercise of reasonable care should have become aware, that the disfavored driver is not going to yield the right of way, it becomes the duty of the favored driver to exercise reasonable care to avoid a collision (*Martin v. Hadenfeldt,* 157 Wash. 563, 289 Pac. 533; *Stokoe v. Paulson,* 168 Wash. 1, 10 P. (2d) 247; *Butzke v. Hendrickson,* 172 Wash. 302, 20 P. (2d) 7; *Finical v. McDonald,* 185 Wash. 121, 52 P. (2d) 1250), and that one will not be heard to say that he looked and did not see that which was there to be seen (*Silverstein v. Adams,* 134 Wash. 430, 235 Pac. 784; *Chess v.*

*Reynolds,* 189 Wash. 547, 66 P. (2d) 297; *Poland v. Seattle,* 200 Wash. 208, 93 P. (2d) 379; *Hefner v. Pattee,* 1 Wn. (2d) 607, 96 P. (2d) 583).

Appellants' contention is bottomed on the claim that, despite respondent's testimony to the contrary, the truck was there to be seen at the time that respondent allegedly looked to his left the first time; and the entire case resolves itself, in effect, into a question of fact as to whether or not that specific claim is correct.

As stated before, respondent and appellant Nelson were the only eyewitnesses to the accident, and the testimony of neither of them was entirely satisfactory. Portions of the record, including certain portions of respondent's own testimony, support appellants' contention that respondent first looked to his left from the sidewalk line, at which point his view of the entire block to the east was unobstructed. On the other hand, respondent testified unequivocally that, at the point where he first looked, the truck was not yet in view, and that such point of observation by him was "twenty-five feet from the entrance to the intersection." At that point, respondent's view to the left along east Boston street would be a limited one. The issue thus became one of respondent's credibility, and, upon that question, the trial court, the trier of the fact, specifically stated in its memorandum opinion:

"There is nothing in the appearance, or demeanor, or testimony of the plaintiff [respondent] to cause the court to challenge his integrity. He did what the law requires him to do—to first look to his left and then to his right—which he did."

The rules upon which appellants rely, and which have been stated above, are, of course, well-settled. They rest, however, upon the established fact, in the cases cited by appellants, that the disfavored driver was in a position where the favored driver

actually saw him, or should have seen him, and was aware, or in the exercise of reasonable care should have been aware, that the disfavored driver was not going to yield the right of way. That was not the situation in the instant case, however. Whether or not the bakery truck was actually in such a position that it could have been seen by respondent when he first looked to his left was one of the principal disputed points in the case. Upon that issue, the trial court said, in its memorandum opinion:

"The court is of the opinion that the plaintiff [respondent] was not guilty of contributory negligence for the reason that, as he approached the obstruction to his left, he looked and did not see any approaching automobile; then looked to his right, and proceeded across. *If the defendants' [appellants'] bakery truck had been near enough to the obstructed intersection to have warned the plaintiff of its approach at that time, in time enough to have warned the favored driver that the disfavored driver was not going to yield the right of way, then the plaintiff would have been guilty of contributory negligence to such an extent as to prevent recovery.*" (Italics ours.)

The logical inference to be drawn from the italicized portion of the above-quoted statement is that the trial court determined from the evidence that the bakery truck was *not* near enough to the obstructed intersection to be seen by, or to serve as a warning to, respondent at the time that he first looked to his left. Otherwise, according to the court's own statement, it would have found respondent guilty of contributory negligence.

Our examination of the record convinces us that the evidence and the reasonable inferences to be drawn therefrom furnished adequate support for the trial court's views upon that question. The formal findings of fact are not inconsistent with the memorandum

opinion, and are therefore to be read in the light of the views expressed in that opinion. When so read, the findings establish the fact that, as respondent approached the obstructed corner and looked to his left, the truck had not yet reached a point at which it could be seen by respondent.

 The next question, then, is whether or not the trial court's findings, as we have interpreted them, are supported by the evidence. The applicable rule is, of course, that, in an action tried to the court, the findings will not be disturbed unless the evidence clearly preponderates against them. *Rockwell v. Peyran,* 172 Wash. 434, 20 P. (2d) 841; *Grimes v. Fraser,* 178 Wash. 511, 35 P. (2d) 88; *Warner v. Keebler,* 200 Wash. 608, 94 P. (2d) 175; *Tutewiler v. Shannon,* 8 Wn. (2d) 23, 111 P. (2d) 215; *Lee v. Debentures Incorporated,* 8 Wn. (2d) 353, 112 P. (2d) 142. As expressed in one of our recent decisions, the *judgment* of the trial court will not be disturbed unless the evidence clearly preponderates against the court's findings. *King v. Brehme,* 174 Wash. 61, 24 P. (2d) 453. In this connection, an additional fact to be kept in mind is that, on the pivotal issue in this case, namely, whether or not respondent was guilty of contributory negligence, the burden of proof was on appellants.

██ While we realize that, in this case, there was certain testimony which conflicts with the court's findings, the evidence as a whole does not clearly preponderate against them. On the contrary, we are of the view that the evidence, considered in its entirety, supports the decision of the trial court. It is true that the findings do not say specifically that the bakery truck was *not* at a point where it could be seen by respondent at the time when he first looked to his left. On the other hand, the findings do not say that the truck *was* at a point where it could have thus been seen by

respondent. The language of the findings is somewhat ambiguous in that respect, but the court's conclusion on the issue of contributory negligence clearly indicates the sense in which the particular finding was intended to be read. As stated in *Shafer v. United States Casualty Co.,* 90 Wash. 687, 156 Pac. 861,

"Every necessary fact not expressly negatived will be presumed, and the insufficiency of the findings of fact is immaterial where the evidence justifies the judgment, and merely defective findings will not invalidate it."

The judgment is affirmed.

BEALS, SIMPSON, JEFFERS, and DRIVER, JJ., concur.

BLAKE, J. (dissenting)—This case presents a type of accident of frequent occurrence: The disfavored driver fails to yield the right of way, and the favored driver runs into him when he has almost cleared the intersection. Plaintiff, the favored driver, testified, in effect, that, when he reached the north sidewalk line of east Boston street, he looked to the east and saw no vehicle approaching; that he then looked to his right, and, seeing no vehicle coming from the west, turned his head and proceeded across east Boston street; that, when he turned his head after looking to the west, he saw the truck looming up right in front of him.

Notwithstanding the northeast corner of the intersection was obstructed, plaintiff had a clear view up east Boston street for a block to the east from the point where he said he looked and saw no vehicle approaching. Under any hypothesis as to the speed or position of the truck at the moment plaintiff said he looked, manifestly, it was in plain sight and going at such a speed as to make it obvious that the driver was not going to yield the right of way. Had he seen

the truck, plaintiff, doubtless, could and would have stopped, for he was traveling at a speed of only fifteen miles an hour. The fact that he did not see the truck, however, is immaterial. The law will not excuse him of contributory negligence when he failed to see that which was in plain sight. *Helliesen v. Seattle Elec. Co.*, 56 Wash. 278, 105 Pac. 458; *Silverstein v. Adams*, 134 Wash. 430, 235 Pac. 784.

In several cases, we have held the favored driver guilty of negligence *as a matter of fact* under circumstances and conditions very similar to those in the case at bar. *Geitzenauer v. Johnson*, 161 Wash. 444, 297 Pac. 174; *Butzke v. Hendrickson*, 172 Wash. 302, 20 P. (2d) 7; *Finical v. McDonald*, 185 Wash. 121, 52 P. (2d) 1250. In so holding in the *Geitzenauer* and *Finical* cases, we reversed the judgments of the trial courts, entered upon findings absolving the favored driver of negligence. And, in one case at least, under facts indistinguishable from the facts in the case at bar, we have held the favored driver guilty of contributory negligence *as a matter of law*. *Chess v. Reynolds*, 189 Wash. 547, 66 P. (2d) 297. Sustaining a judgment in favor of the defendant, entered notwithstanding the verdict of the jury in favor of the plaintiff (the favored driver), the court there said:

"While appellant was the favored driver, the undisputed evidence clearly indicates that, while respondent's truck, which was a fairly large one, was in plain sight, *appellant did not see it until practically the instant of contact. Appellant testified that he looked towards his left, but if he looked and did not see what was there, he is responsible for what he should have seen.* Assuming respondent's negligence, we are satisfied that the trial court properly held that appellant was also guilty of negligence which bars his recovery in this action, and that the motion for judgment in

188

respondent's favor notwithstanding the verdict was properly granted." (Italics mine.)

I dissent.

ROBINSON, C. J., MAIN, and MILLARD, JJ., concur with BLAKE, J.