[No. 33315. Department One. January 26, 1956.]

RICHARD J. HOVILA et al., *Respondents*, v. EMIL E. BARTEK et al., *Appellants*.[1]

*Merkel & Cook*, for appellants.

*Merrill Wallace*, for respondents.

FINLEY, J.—This is an appeal from a judgment wherein plaintiffs were decreed to be the owners of a certain pipeline, which is part of a domestic water supply system, and were given a prescriptive right to maintain the portion of the pipeline which runs through land owned by defendants.

[1] Reported in 292 P. (2d) 877.

In substance, the facts found by the trial court are as follows: The parties hereto are adjoining property owners. The south portion of respondents' (the Hovilas) land, hereinafter referred to as tract A, abuts land owned by appellants (the Barteks and the Petersons), hereinafter referred to as tract B. In 1909, A. H. Moore and his wife, predecessors in title to respondents, purchased tract A.

To furnish water to his place and for irrigation purposes, Mr. Moore decided to construct a pipeline running generally north and south from Barker creek to his property. Apparently, the most direct or practicable route for the pipeline would have been north and south across tract B, which lies immediately south of tract A; however, Mr. Johnson, the *then* owner of tract B, refused permission for the pipeline to cross through his property. Thereupon, Mr. Moore constructed the pipeline on a less direct route— in effect, going around tract B through property lying to the east thereof. Subsequently, Mr. Moore changed the course of the pipeline from its original location by running it from tract A, through tract B, to an unnamed tributary of Barker creek. This occurred sometime prior to 1927, the year in which Benjamin and Margaret Rotter acquired title to tract B from one Carter, Mr. Johnson's successor in title. When Mr. Moore changed the location of the pipeline, he also placed a ram in the tributary of Barker creek for the purpose of lifting water into the pipeline.

The trial court also found that the Rotters (owners of tract B *from 1927 to 1945*) recognized A. H. Moore as owner of the pipeline, the ram located in the tributary, and the water tank located upon tract A. This finding is supported by Margaret Rotter's testimony relating to the water system: that, when their separate ram froze and became inoperative in the early thirties, the Rotters *had asked and received permission of A. H. Moore* to connect on to the pipeline then crossing through tract B. The trial court further found that in 1936 one Louise Conger became the owner of tract A and entered into an agreement with the Rotters, granting them permission to use the water made available by the ram, pipeline, and water tank previously

owned by A. H. Moore. In other words, the trial court found that, for the period from 1927 to 1936, the Rotters recognized A. H. Moore's interest in the pipeline, and Louise Conger's interest and her successors' interest in it from 1936 until 1945.

Tract A (first owned by A. H. Moore and then by Louise Conger and certain successors in title) was acquired by the Hovilas (respondents) by mesne conveyances; tract B was acquired by the Barteks and the Petersons (appellants).

The specific findings of fact which the trial court made relative to the factual situation as it existed from the year 1945 until the commencement of this action are as follows:

"VI. That the defendants Bartek and wife, since the year 1945, and the defendants Peterson since the year 1947, have with the permission of plaintiffs used water from said pipeline and that plaintiffs have revoked permission to use the water furnished defendants by said ram, pipeline and storage tank, and that difficulty has existed between the parties relative to question of ownership, operation and maintenance of the water system.

"VII. That approximately eighteen months prior to the commencement of the action the existing ram placed in said creek by plaintiffs' predecessors in title became open and plaintiffs and defendants by oral agreement purchased a new ram and that defendants have waived all right, title and interest in and to said new ram."

From the foregoing facts, the trial court made the following pertinent conclusion of law:

"II. That plaintiffs are entitled to a judgment of the Court adjudging them to be the owners of the diversion site for water supply as against any rights of the defendants therein and that plaintiffs are entitled to judgment awarding them the pipeline existing upon defendants' property and that none of said defendants have any right, title or interest in and to said water line existing upon their property and the said plaintiffs are further entitled to judgment awarding them an easement by prescription and by adverse user and possession over, along, above and across the property of the defendants, with the right to maintain the same and with a right to go upon said premises for the purposes of repair and replacement of said existing pipeline."

Appellants (Barteks and Petersons) assign error to several portions of the findings of fact made by the trial court. Generally speaking, the evidence is somewhat hazy because of the nature of the controversy and the period of time covered by the testimony. Our scope of review is confined to a determination as to whether or not the evidence preponderates against the findings of the trial court.

We have held repeatedly that, where the evidence is closely conflicting or equally balanced, the findings of the trial court will not be disturbed. *Sears Roebuck & Co. v. Nilsen*, 175 Wash. 237, 27 P. (2d) 128; *Brown v. VanTuyl*, 40 Wn. (2d) 364, 242 P. (2d) 1021; *In re Dand's Estate*, 41 Wn. (2d) 158, 247 P. (2d) 1016.

Appellants contend that the use of tract B for construction and maintenance of the pipeline was permissive in its inception. The record does not show that permission was ever given to A. H. Moore by any of appellants' predecessors in title to construct and maintain the pipeline over their property (tract B). Therefore, a finding that the use was permissive would have to be based solely upon the legal presumption that, when one enters or goes upon another's property, he does so with the true owner's permission. However, proof that the use by one of another's land has been open, notorious, continuous, and uninterrupted for the required time creates a presumption that the use was adverse unless it is otherwise explained; and the burden is then upon the servient owner to show that the use was permissive. *Northwest Cities Gas Co. v. Western Fuel Co.*, 13 Wn. (2d) 75, 123 P. (2d) 771; *Roediger v. Cullen*, 26 Wn. (2d) 690, 175 P. (2d) 669; *Gray v. McDonald*, 46 Wn. (2d) 574, 283 P. (2d) 135; 1 Thompson on Real Property (Perm. ed.) 718, § 436.

Counsel for appellants further contend that the owners of tract B were never put on notice that the use of it (maintenance of the pipeline thereon) was claimed to be adverse or hostile to their title. However, if the use of another's land is open, notorious and adverse, the law presumes knowledge or notice in so far as the owner is con-

cerned. Of course, if the owner knew of the adverse user, no further proof as to notice is required.

It is apparent from the following testimony of Margaret Rotter (relative to the agreement made with Louise Conger in 1936) that Mrs. Rotter not only knew of the adverse user, but at all times considered the pipeline and ram to be the sole property of A. H. Moore:

"Q. Can you tell us about the statements relative to the ram? A. It says, 'Whereas the parties of the first part [Rotters] have a ram . . .'—they never did. *That was Archie's ram, as far as I was concerned, and always will be.* THE COURT: Whose? THE WITNESS: Archie Moore's. There is no agreement that it was our ram. We just had this made up. Miss Conger thought it would be a good idea to have it in writing that the water would be going up to their place and my husband helped put the tank up at her place at that time. Nothing was said that we owned the ram or had anything to do with the ram." (Italics ours.)

Again, when questioned by the trial judge as to her knowledge concerning the ownership of the pipeline, Margaret Rotter testified:

"THE COURT: At the time you asked permission to hook onto the line, was there any evidence other than that, that they owned the line—did they tell you they owned it or what? THE WITNESS: *It was just knowing it was Archie Moore's line—and that it was his ram.*" (Italics ours.)

As was pointed out by the trial judge in his oral opinion:

"Rarely, do you have subservient tenants, against which you are trying to assert the claim, come in and frankly and honestly testify that that right was claimed and used completely and entirely for a period of eighteen years, and is still being used at the present time."

■ It is somewhat unfortunate that there is no definite and positive evidence as to the year or the exact date when the pipeline was in fact placed across appellants' property. It is quite clear, however, that the pipeline was there when the witness Margaret Rotter commenced occupancy of tract B in 1927, and that there was no break in the continuity of the adverse user which began at least from that date.

The trial judge found that the respondents had sustained the burden of proving that the adverse use on which they relied to establish their prescriptive easement had been open, notorious, continuous and uninterrupted for more than the required ten-year statutory period. We cannot say that the evidence preponderates against the finding. We have carefully considered all of appellants' assignments of error. We find them without merit.

The judgment of the trial court is affirmed.

HAMLEY, C. J., SCHWELLENBACH, DONWORTH, and OTT, JJ., concur.

March 8, 1956. Petition for rehearing denied.