[No. 34340. Department One. February 26, 1959.]

NORMAN M. IVERSON, *Appellant*, v. GUY E. PETERMAN *et al.*, *Respondents*.[1]

[1] Reported in 335 P. (2d) 819.

*Robbins, Oseran & Robbins*, for appellant.

*James V. Abbott* (of *Abbott & Curtis*), for respondents.

HUNTER, J.—This is an action by the plaintiff Norman M. Iverson, doing business as Western Motels and Investments, to recover a commission of seventeen thousand dollars in connection with an agreement for the exchange of properties between Guy E. Peterman and his wife, and A. J. Pomatto and his wife. The Petermans will hereinafter be referred to as Peterman (also respondent) and the Pomattos as Pomatto.

Peterman owned a motel in Seattle and Pomatto owned the Town House Motel in Bakersfield, California. The parties were interested in exchanging their respective properties, and the plaintiff acted as their broker. The first agreement entered into by the parties was a commission agree-

ment between the plaintiff (broker) and Peterman. It provided:

"This agreement entered into between Guy E. Peterman and Elizabeth, his wife, as first parties, and Western Motels and Investments as second parties, on Feb. 16, 1956.

"First party agrees to assume the *commision* obligation of A. J. Pomatto and his wife on the sale of the Town House Motel in Bakersfield, Kern County, State of California to the Petermans. This is in the sum of $17,000.00 which the Petermans, as first parties will pay to the firm of Western Motels and Investments as follows:

"Three hundred dollars monthly or more including 6% interest with the entire balance becoming due and payable three years from the above date."

This agreement was superseded by an agreement entered into on February 28, 1956, between Iverson, Peterman and Pomatto, which provided for the exchange of the properties; that time was of the essence; that the agreement was to be completed by April 2, 1956; that Peterman was to deposit ten thousand dollars as earnest money; *that if there was a default that the defaulting party would be liable to the broker for all commissions, and that the other party should be released from all liability.* It also contained the following typewritten provision:

". . . *This offer subject to an inspection of the records* of the motel operation and the verification of a gross of Approx $60,000.00 for the nine months of First Parties [Pomatto] tenure. . . ." (Italics ours.)

In the early part of March, 1956, Guy E. Peterman and his accountant went to California for the purpose of inspecting the records of the Pomatto Motel. They were told that the books of the Motel were in Los Angeles with Pomatto's accountant, and, since the accountant was on vacation, access to the books was impossible. Peterman and his accountant then returned to Seattle and Peterman thereupon stopped payment on the check for ten thousand dollars which had been deposited in the California escrow account where the transaction was to be handled.

Thereafter, Pomatto's accountant mailed to Peterman's attorney, an unverified nine-month statement of the motel

operations. This was received on or about March 26, 1956, and being satisfied with the information, Peterman mailed a cashier's check for ten thousand dollars to the California escrow account on March 30, 1956. He obtained the remaining papers required by him to be deposited in escrow and necessary for closing the transaction, took them into his possession and arrived in Bakersfield, California on the morning of April 3, 1956. He went directly to see Pomatto for the purpose of closing the exchange agreement.

The testimony is in dispute as to what was said but Pomatto refused to go ahead with the transaction because it was past the closing date of April 2, 1956. The parties then mutually agreed to rescind the exchange agreement and closed the escrow account. This was done without the knowledge or the consent of the plaintiff. He subsequently brought this action in the state of Washington to recover his seventeen-thousand-dollar commission from Peterman. The trial court held that Peterman did all things necessary and reasonable to comply with the requirements of the exchange agreement; that Pomatto did not furnish the required information relative to his motel operations; that he failed to complete the agreement without cause; that he was in default and Peterman was not liable for the commission.

The court made its findings of fact and conclusions of law accordingly, and entered judgment thereon. Plaintiff appeals.

The appellant makes assignments of error to certain findings of fact, conclusions of law and judgment entered, and failure of the trial court to adopt his proposed findings of fact and conclusions of law.

■ Appellant contends that the performance of the condition providing for the furnishing of information concerning the income from Pomatto's motel operations was waived by Peterman. This contention is not inconsistent with the findings of the trial court when viewed in the light of the court's memorandum opinion. Therefore, this court may look to the trial court's memorandum opinion, if necessary, to clarify the findings of fact, where the views ex-

pressed therein are not inconsistent with the court's findings. *McLean v. Continental Baking Co.*, 9 Wn. (2d) 176, 114 P. (2d) 159 (1941); *Abbott Corp. Limited v. Warren, ante* p. 399, 333 P. (2d) 932 (1959).

In its findings of fact the court stated:

"III. That on or about the 28th day of February, 1956, defendants and said A. J. POMATTO and his wife executed an instrument entitled 'Exchange Earnest Money Receipt and Agreement', marked for identification in this cause plaintiff's Exhibit '2'; that said agreement was conditioned upon the inspection of records of the motel operation of said A. J. POMATTO and the verification of an approximate gross therefrom of nine months operating period of $60,000.00; that said A. J. Pomatto and his wife failed and refused to provide the records of the motel operation or to provide verification of said gross income."

"IV. That one of the conditions of the aforesaid exchange agreement was a covenant between the defendants, the plaintiff, who also executed said agreement by his agent, and said A. J. Pomatto and his wife, that if either A. J. Pomatto and wife or defendant neglected or refused to complete the exchange, and provided the party not in default did not demand completion of the sale, then in that event all parties to said exchange agreement agreed that the aggregate of all commissions that would be due the plaintiff broker pursuant to said transaction should be paid by the defaulting party and the party not in default should be released from all liability to both the broker and the defaulting party. That defendants did all things necessary and proper and reasonable to comply with the requirements of said exchange agreement; that A. J. Pomatto and wife neglected, failed and refused, without justifiable cause or reason to perform the agreement or complete the exchange of properties, and that the failure of said agreement to be consummated is solely the fault of A. J. Pomatto and wife."

The trial court, in its memorandum opinion, stated in part as follows:

"Be that as it may, Mr. Peterman decided that that was acceptable [statement of Pomatto's motel operations received on March 26, 1956]. So he then promptly went to Bakersfield and was at that time prepared to consummate the transaction; but Mr. Pomatto refused. I have reread the depositions of Mr. Filson and Mr. Pomatto since hearing

the oral testimony; and I am satisfied that the overwhelming weight of the testimony is that as of April 3rd Mr. Pomatto was the one who declined to proceed. *Mr. Peterman was the one who was willing to proceed with the deal.*

"I have not overlooked the fact that April 2nd was specified as the date for closing. However, this language in the exchange agreement that the offer is subject to an inspection of the records of the motel operation and a verification of a gross of approximately $60,000.00, etc., was a condition precedent to consummation of any exchange agreement, that is, any obligation on the part of Mr. Peterman to consummate the exchange agreement until he had been furnished this information.

"Mr. Pomatto was wholly in default for the delay in furnishing that information; *and I find that Mr. Peterman acted with reasonable promptness following receipt of the financial statement of Mr. Klimmer, which is Exhibit 18. So any delay up to the closing date is no responsibility of Mr. Peterman, but wholly the responsibility of Mr. Pomatto.*" (Italics ours.)

 The record clearly shows the respondent did accept the report of Pomatto's accountant on the California motel operations. This waived the performance of the condition requiring a verification of a gross sixty-thousand-dollar income for a nine-month period of Pomatto's tenure, essential to the exchange agreement becoming operative. The appellant became entitled to his commission as provided therein, irrespective of the failure of its consummation thereafter by the parties.

The agreement having been rescinded the appellant was entitled to recover from the party in default. The sole question then remains: Was Peterman *in default*?

Appellant contends that time was of the essence and that Peterman was in default by his failure to perform by the closing date of April 2, 1956. This is contrary to the trial court's findings, *supra*.

 The findings of the trial court are clearly supported by the evidence. Pomatto, by his failure to supply the financial statement until March 26, 1956, denied Peterman the time allowed for his performance, as contemplated in the contract. By his default, Pomatto waived the required per-

formance date of April 2, 1956, and Peterman was entitled to a reasonable time to perform thereafter. *Long v. Pierce County,* 22 Wash. 330, 61 Pac. 142 (1900).

The appellant contends, however, that Peterman was in default by his failure to deposit the documents in escrow as required by the agreement. The record discloses Peterman testified to the following conversation that ensued upon his arrival in Bakersfield:

"A. . . . he [Pomatto] said, 'It's all off, Pete. I can't go through with it.' I said, 'What's the matter, Mr. Pomatto?' . . . 'Why not, Mr. Pomatto? I have got everything here in shape to complete it. It won't take five minutes in the escrow office to complete the deal.' 'Well,' he said, 'I can't. It would take me at least three weeks to read these papers and analyze them and get them ready so that I would know what I was signing, and I'm going on my trip to Europe in two days. . . .'"

■ Although this conversation does not conform with Pomatto's version of what was said on this occasion, it is nevertheless substantial evidence to support the court's findings that respondent did all that was reasonably necessary for his performance under the exchange agreement. The formal deposit by Peterman of the instruments in escrow would have been a useless act. This is not required in law. *Weinberg v. Naher,* 51 Wash. 591, 99 Pac. 736 (1909)

■ Peterman not having been found to be in default is absolved from liability for the payment of the appellant's commission under the contract. The judgment of the trial court must therefore be affirmed.

It is so ordered.

MALLERY, HILL, FINLEY, and FOSTER, JJ., concur.