**Lindsey O. GALYEN, Plaintiff,**

v.

**VOYAGER INN, INC., Defendant.**

No. 70–336 Civ.

United States District Court,
W. D. Oklahoma,
Civil Division.

May 14, 1971.

Frank W. Booth, Van Buren, Ark., for plaintiff.

Andrew L. Hamilton, Oklahoma City, Okl., for defendant.

## MEMORANDUM OPINION

DAUGHERTY, District Judge.

Plaintiff, Lindsey O. Galyen, sues the Defendant, Voyager Inn, Inc., for a Twenty Thousand Dollar ($20,000.00) Real Estate Broker's Commission on an Exchange Contract dated February 8, 1969 and entered into between Voyager Inn and one John Gilmartin. Plaintiff also signed the Contract as Agent. Plaintiff acknowledges that he has received Two Thousand Dollars ($2,000.-00) from the Defendant which he applies toward the Commission leaving a claimed balance due Plaintiff from Defendant of Eighteen Thousand Dollars ($18,000.00) for which he sues herein.

The Defendant owned an apartment and shopping center complex in Norman, Oklahoma. He advertised the same for sale. The Plaintiff answered the ad and as a Real Estate Broker or Agent suggested that Defendant might trade the Norman property rather than sell the same. The Defendant responded that it was agreeable to an exchange if a satisfactory one could be worked out. The Plaintiff then produced Mr. John Gilmartin and after a proposed exchange involving the Norman property for some lots near Kingsman, Texas did not materialize, the Defendant and Gilmartin

did execute the above-mentioned Exchange Contract whereby the Defendant was to exchange the Norman property for one hundred fifty (150) lots in Odessa, Texas represented as being owned by Gilmartin.

Certain provisions of the Exchange Contract are pertinent to this litigation and will be set out as follows:

"First Party (Voyager Inn) represents that he is the owner of the land and premises described as follows, to-wit:

COUNTRY CLUB APARTMENTS & SHOPPING CENTER, LOCATED IN blocks fifteen & sixteen (15 & 16) in the NATTC area of the city of Norman, Oklahoma; and to include all improvements and vacant lands of said blocks 15 & 16; together with all furniture, fixtures and equipment both in use and stored in warehouse buildings."

"Second Party (Gilmartin) represents that he is the owner of the land and premises described as follows, to-wit:

One hundred and fifty lots located in LAWNDALE ADDITION, Ector County, Texas; and located on the North side of Odessa, Texas. More completely described as the following lots: Lots 3–16, Bl. 17; all of Blocks 18, 19, 20, 21, 22, 23 & 13; Lots 1–15, Bl 14; Lots 1–4, Bl 15; Lots 1–6, Black 16; of Lawndale Addition. * * * "

"The agreed value of same being $100,000.00. Said property is subject to the following liens and encumbrances: The same shall be delivered clear of indebtidness (sic)."

Each party then agreed to furnish each other with complete abstract or title policy of the property to be conveyed showing merchantable title to his property.

The Exchange Contract further provided:

"Should either party fail to consummate this contract, as specified for any reason, the other party may retain the cash deposit as liquidated damages for said breach after paying the agent therefrom the usual commission, or may enforce specific performance. Taxes for the current year, current rents, insurance and interest, if any are to be prorated at the date of closing.

First Party has deposited with Lindsey O. Galyen Agent, the sum of $1,000.00, receipt of which is hereby acknowledged, and agrees to pay him a commission of $15,000.00. Second Party has deposited with Agent, the sum of $1,000.00, receipt of which is hereby acknowledged, and agrees to pay him a commission of $5,000.00. Both Parties hereto have been represented in this transaction by Lindsey O. Galyen as Agent. They agree that said Agent shall represent both of them and each will pay him a commission for his services as above. If either party shall default on this Exchange Contract, the defaulting party agrees to pay the Agent the full commission of both parties."

The parties agreed on attorney Tom Benedum of Norman, Oklahoma (who was attorney for Gilmartin) to be Escrow Agent. He examined and approved Defendant's abstract of title and Defendant placed with him in Escrow the required deeds to the Norman property. Gilmartin, however, never furnished Mr. Benedum with a deed or deeds to the Odessa, Texas lots. Eventually Mr. Benedum returned Defendant's deeds to it with the permission of Gilmartin.

From the evidence presented to the Court it is clear beyond any doubt and the Court so finds that Gilmartin never owned or had title to the one hundred fifty (150) Odessa lots as he represented in said Exchange Contract. It is undisputed that he never placed deeds to said Odessa lots in Escrow with Mr. Benedum and the Court so finds. The Court further finds that the Plaintiff knew or in the exercise of reasonable diligence should have known at the time he caused the said parties to enter into

the Exchange Contract that Gilmartin did not own the one hundred fifty (150) Odessa lots as represented to Defendant. The Court also finds from the evidence that Gilmartin did not and was never able to deliver title or deeds to the one hundred fifty (150) Odessa lots and thereby failed to effect or complete the exchange. On the other hand the Court finds that the Defendant owned the Norman property—title of the same was approved by Gilmartin's attorney, the Defendant placed its deeds to the Norman property with the Escrow Agent as agreed upon and was ready, willing and able to consummate the Exchange Contract in accordance with its terms at all pertinent times. In fact, when the Defendant later learned that Gilmartin did not own the lots (this was after the Exchange Contract was entered into) but that they belonged to a man named Doss with whom Gilmartin was dealing in some manner, the Defendant with knowledge of the Plaintiff and Gilmartin advanced $42,000.00 to Doss whereby Defendant got certain Odessa lots and others were to be released to Gilmartin so that he could sell the same for $100,-000.00 and consummate the Exchange Contract with said cash rather than lots. The Court finds that the Defendant took this step to assist Gilmartin to consummate their Exchange Contract. But Gilmartin was never able to get the required lots from Doss. The Court finds the Defendant to be free from blame in the failure of the parties to consummate the Exchange Contract. Obviously the Defendant could not obtain specific performance of the Exchange Contract for Gilmartin never owned the lots and the Court so finds.

■ In these circumstances the Plaintiff is not entitled to recover herein for any one of several reasons. First, Plaintiff is precluded from recovery because he did not produce in the person of Mr. Gilmartin one who was ready, willing and able to exchange property with the Defendant and for said reason cannot be said to have earned his Broker's Commission for the exchange of the properties involved.

12 A.L.R.2d Page 1428, § 14 states: "If a contract or agreement for the exchange of property is not specifically enforceable because of want or insufficiency of title of a customer to property proposed to be exchanged, and the customer repudiates or fails to complete the transaction, the broker negotiating it cannot recover compensation from his principal, if the latter is free from blame.

A broker's commission 'for sale or exchange' of property is not earned by the production of a customer who enters into a contract of exchange which he is unable to complete and which is not specifically enforceable because of the legal insufficiency of the title to property offered in exchange. Burk v. Estes (1921, Tex.Civ.App.) 236 S.W. 514, error dismd."

■■ In addition to the above reason the Plaintiff cannot recover herein for his failure to proceed in good faith and with reasonable diligence as to the Defendant by not disclosing to the Defendant prior to permitting it to enter into said Exchange Contract that Gilmartin did not own the one hundred fifty (150) Odessa lots as he represented in said Contract. The Plaintiff was entitled to act as Agent for both parties to the Exchange Contract, but in doing so he owed to each the duty of good faith and the duty to disclose all facts known to him or discoverable by him with reasonable diligence.

12 C.J.S. Brokers § 41 at page 98 states:

"*As agent for both parties.* In acting as the agent for both parties to an exchange or transfer of properties, a broker must exercise the same good faith and loyalty to both principals, and must make a full and truthful disclosure of all facts known to him, or discoverable with reasonable diligence by him, likely to affect either customer's interest, as the customers have

the right to rely on his statements, and are under no duty to be on the alert or to investigate them."

12 Am.Jur.2d, Brokers, § 207 at page 950 provides:

"Where a broker procures a customer for the exchange of property and the principal enters a valid contract for such exchange, the broker may be entitled to his commission even though the exchange fails because of a defect in the customer's title. However, in some cases where an exchange failed because of defective title of the customer, the broker has been held not entitled to compensation, such as where the agreement for exchange was not specifically enforceable or where the right of commissions depended upon consummation of the transaction. *Also, where the broker knows that the customer has no title and fails to inform the principal of such fact, he has not acted in good faith and is not entitled to commission.*" (Emphasis added.)

Our Circuit in Davidson v. Vandegrift, 292 F.2d 651 (Tenth Cir. 1961) states:

" * * * Oklahoma has held that a broker is not entitled to a commission when, at the time of finding the customer, he knows or should have known of the defects which defeat the transaction."

Also see Wewoka Petroleum Corporation v. Gilmore, Okl., 319 P.2d 285, 291; Monzingo v. Bowers, 135 Okl. 225, 275 P. 339, 340–341.

Under these rules of law the Plaintiff may not recover for the Court finds under the evidence that Plaintiff knew that Gilmartin did not own the one hundred fifty (150) lots in Odessa, Texas at the time he caused the parties to enter into the Exchange Contract. This is based on the earlier experience with Gilmartin with reference to the Kingsman, Texas lots and his knowledge with reference to Gilmartin's dealings with Doss regarding the Odessa lots wherein the Plaintiff knew or in the exercise of reasonable diligence should have ascertained and told the Defendant that Gilmartin did not own the Odessa lots but in fact only hoped to obtain title to them by some means from Doss. In these circumstances the Plaintiff should not have permitted the Defendant to sign an Exchange Contract with Gilmartin by the terms of which the Defendant was wrongfully led to believe that Gilmartin was the owner of fee simple title at the time of signing the Exchange Contract to the one hundred fifty (150) Odessa lots. Thus, the Court finds that the Plaintiff knew or should have known that Gilmartin did not own the Odessa lots when he permitted the Exchange Contract to be executed, which defect defeated the transaction and precludes Plaintiff from being entitled to a commission.

█ Next, it is the Court's interpretation of the Exchange Contract provision that in case one of the two contracting parties shall default and the other is ready, willing and able to perform that in such situation the Agent or Broker may recover the entire Commission only from the defaulting party and may not look to the other party who is ready to perform for either that part of the overall Commission he agreed to pay or the full Commission. It appears that the Plaintiff attempted to collect the entire Commission from Gilmartin in Texas litigation. Apparently failing in this attempt the Plaintiff now seeks to recover the entire Commission from the Defendant who the Court finds did not default and was not a defaulting party in the consummation of the Exchange Contract. It would be clearly unfair for a party ready, willing and able to consummate the Exchange Contract on his part to be liable for either his part of the Commission or the entire Commission when the exchange fails by the default of the other party to the Exchange Contract who was produced by the Broker who seeks to recover the full Commission.

12 C.J.S. Brokers § 82 at page 180 provides:

"Under a contract expressly placing liability for commissions on the defaulting party, the sole remedy, in case of default, *is against that party.* According to some, although not other, authorities, where a broker represents both parties to a transaction with their knowledge and consent and one defaults in performance, that party is liable for both commissions." (Emphasis added.)

Also, see Green v. Kaempf, 192 Wis. 635, 212 N.W. 405; Fitzpatrick v. Bradshaw, 171 Wash. 335, 17 P.2d 894; Danziger v. Tessitore, 13 La.App. 450, 126 So. 700; Canute v. Burnett, 237 Ark. 387, 373 S.W.2d 143; Smith v. Pitts, 98 Ga. App. 831, 107 S.E.2d 279; Castellon v. Nations, La.App., 230 So.2d 675; Iverson v. Peterman, 53 Wash.2d 659, 335 P.2d 819; Price v. Francis, 184 Va. 484, 35 S.E.2d 823.

The fourth reason why the Plaintiff may not prevail herein is because he returned to Gilmartin the One Thousand Dollar ($1,000.00) deposit placed with Plaintiff by Gilmartin. Plaintiff himself testified that at the time the Defendant deposited One Thousand Dollars ($1,000.00) with him (by check which he cashed) Gilmartin also gave him his deposit in the form of a check in the amount of One Thousand Dollars ($1,-000.00) and that Plaintiff did not cash this check but kept the same and when Gilmartin left the Norman property and the exchange had definitely failed that Plaintiff without permission or authority from the Defendant returned said check to Gilmartin. In this connection the contract provides:

"Should either party fail to consummate this contract, as specified for any reason, the other party may retain the cash deposit as liquidated damages for said breach after paying the agent therefrom the usual full commission or may enforce specific performance."

12 Am.Jur.2d, Brokers, § 209 at page 951 states:

"But where an agreement of purchase and sale gives the seller the right to declare a forfeiture of the purchaser's deposit upon the purchaser's failure to consummate the sale, a broker who returns such deposit to a defaulting purchaser without the seller's authorization, or who urges and procures from the seller the return of such deposit without mentioning any claim of commission may not recover a commission from the seller."

69 A.L.R.2d 1246 provides:

"Where consummation of sale failed because of purchaser's default, it has generally been held that where an agreement of purchase and sale gives the seller the right to declare a forfeiture of the purchaser's deposit upon the purchaser's failure to consummate the same, a broker who returns such deposit to defaulting purchaser without the seller's authorization, or who urges and procures from the seller the return of such deposit without mentioning any claim for commission may not recover commissions from the seller."

■ Thus the Court finds and concludes that the Plaintiff waived or forfeited his right to a Commission from the Defendant on the Exchange Contract involved herein by returning to Gilmartin after he defaulted without the Defendant's authorization the One Thousand Dollar ($1,000.00) deposit placed with him by Gilmartin.

Plaintiff has urged that he is entitled to recover a real estate agent's commission from Defendant because Defendant is estopped from denying liability for same or has waived any defenses to paying same. The facts of this affair as found by the Court have been outlined above. The Court is aware of no conduct by the Defendant from which he is so estopped or which would constitute a waiver of his rights or defenses and so finds. The simple truth of this case is that the Plaintiff produced in the person

of Gilmartin a party to the transaction who was not able at any time to consummate the deal and that Plaintiff knew this or in the exercise of reasonable diligence should have known it, whereas, the Defendant at all times was able, willing and ready to consummate the deal and in good faith even went far out of his way to assist Gilmartin in an effort to effectuate the exchange to no avail.

The Court finds in the circumstances of this case and under the provisions of the Exchange Contract that the Defendant is entitled to recover on its Counterclaim against the Plaintiff the monies Plaintiff received from the Defendant in this transaction. The Court finds that the first One Thousand Dollars ($1,000.00) held by the Plaintiff from the Defendant represents the deposit of the Defendant provided for in the Exchange Contract as set out above. As Gilmartin defaulted in his performance under the Exchange Contract and Defendant did not default this One Thousand Dollars ($1,000.00) cash deposit should have been returned to the Defendant by the Plaintiff. The second One Thousand Dollars ($1,000.00) remitted to the Plaintiff by the Defendant represents an advance by the Defendant to the Plaintiff contingent upon the Plaintiff eventually being entitled to an agent's commission payable by the Defendant and the Court so finds. As such eventuality never came into being this One Thousand Dollar ($1,000.00) advance to the Plaintiff should be returned to the Defendant by the Plaintiff. As the Plaintiff, according to his testimony, did not retain the One Thousand Dollar ($1,000.00) deposit made by Gilmartin to him and as Defendant does not seek recovery of this sum of One Thousand Dollars ($1,000.-00) as liquidated damages under the provisions of the Exchange Contract the Court will enter no judgment with reference thereto. The Court will observe however that the Plaintiff as Agent of both parties acted improperly in returning said deposit to Gilmartin without the approval and authority of the Defendant. The Court finds that Defendant's proof failed on its claim for damages against Plaintiff for slander of title and that Defendant abandoned such claim.

Accordingly, Plaintiff should recover nothing from Defendant herein and Plaintiff's action against the Defendant should be dismissed. Defendant is entitled to recover on its Counterclaim from Plaintiff the sum of Two Thousand Dollars ($2,000.00) and judgment should be entered against the Plaintiff in favor of the Defendant for the sum of Two Thousand Dollars ($2,000.00).

Counsel for the Defendant will prepare an appropriate Judgment covering the foregoing and submit the same to the Court for signature and entry herein after Plaintiff's counsel has approved the same as to form.