JAMES TOWLES, APPELLANT, V. FRANK T. HAMILTON ET AL.,
APPELLEES.*

FILED NOVEMBER 12, 1913.  No. 17,359.

1. **Adverse Possession: PAROL RELINQUISHMENT.** Where the title to
real property has been perfected by a disseizin so long continued
as to take away the right of entry, and bar an action for the land,
that title cannot be divested by a parol abandonment or relin-
quishment (see *School District v. Benson*, 31 Me. 381), unless
such abandonment or relinquishment has existed through the
statutory period of limitations.

2. ————. "One who has acquired absolute title to land by adverse
possession for the statutory period does not impair his title by
thereafter paying rent to the owner of the paper title." *Martin
v. Martin*, 76 Neb. 335.

3. ————. "A possession of land, open, notorious, adverse and ex-
clusive, indicates a claim of right, and will constitute a disseizin,
unless controlled or explained by other testimony." *School Dis-
trict v. Benson*, 31 Me. 381.

4. **Forcible Entry and Detainer: NATURE OF ACTION.** An action for
the forcible detention of real property, instituted and carried to
a judgment in favor of the plaintiff in such action, who was not
the owner of the legal title, and after the title has vested in the
defendant therein by limitation, cannot have the effect of ex-
tinguishing the title of such defendant. The action is merely
possessory, and the question of title cannot be either tried or
determined in such case.

5. ————: PARTIES. The rule of the code of civil procedure that every
action must be prosecuted in the name of the real party in
interest applies with as much force in forcible entry and forcible
detainer cases as in any other.

APPEAL from the district court for Douglas county:
ABRAHAM L. SUTTON, JUDGE. *Reversed*.

*S. I. Gordon*, for appellant.

*Francis A. Brogan*, contra.

---

* December 24, 1913. Order entered to reverse and remand generally,
striking the specific directions; each party to pay his own costs.

REESE, C. J.

This is an action to quiet the title to lot 5, in block 318, in the city of Omaha. Since the appeal was filed in this court the plaintiff has departed this life, and the cause has been duly revived in the name of Walter Towles, his son and only heir. Reference herein to plaintiff will be to the deceased Towles. It is alleged in the petition that plaintiff "has been in the open, notorious, exclusive and adverse possession of all of the said property for about twenty-six (26) years, claiming to own the said property as his own against all persons whomsoever; that he is now in possession of the said property, and has remained continually in possession of the said property from the year A. D. 1884." It is further alleged that defendants claim some interest in the lot in question, but their rights as against those of plaintiff are subject to his, and are denied. Defendants answered by admitting that they claim the property, and alleging that they are the owners thereof. All other averments of the petition are denied. As an affirmative defense defendants plead the entry of a judgment of ouster at the suit of Frank Murphy against the plaintiff, rendered by the district court for Douglas county on the 8th day of November, 1902, the issuance of a writ of possession, and that on the 19th day of said month and year plaintiff was ousted from the possession of the property by the sheriff of Douglas county. Reply, a general denial. A trial was had, which resulted in a finding and decree in favor of defendants and dismissal of plaintiff's petition. Plaintiff appeals.

This being a case in equity, the law requires that the decision thereof must be without reference to the conclusion reached by the district court.

It is beyond dispute that plaintiff took possession of the lot in question in, or prior to, the year 1886, and has retained the possession thereof continuously ever since. If this possession was adverse to the true owner the title became vested in him, unless such title was destroyed by

what followed in the years 1900 and 1902. If plaintiff and his witnesses are to be believed, and they were in no way impeached, his possession was adverse, he claiming the property as the owner thereof, but without color of title. It is shown that the lot was low, some referring to it as swampy, that he made improvements thereon, by fencing it, causing the whole surface to be filled up, the depth of the filling being from six inches to three or four feet, that he raised hogs and chickens, had a barn thereon, and annually cultivated it as a garden, raising vegetables for family use, etc., his house standing in part at least upon the lot and part upon the adjoining lot owned by him, the two lots being inclosed as one property, and the two used as his home for himself and family.

A number of witnesses testified to his declarations while in possession that he owned the lot, and he testified that his possession during the whole time was as owner. In the year 1900 he was called upon and requested to go to a bank in the city to see Mr. Frank Murphy about the lot, and it is said that both on the way to the bank and in the presence of Mr. Murphy, the attorney for Mr. Murphy and another he declared that he had no claim on the lot; that it was suggested to him that he accept a lease for one year, to which he agreed; that a lease in duplicate was prepared by Murphy's attorney, both being signed by Mr. Murphy and by plaintiff, who signed by making his mark; that one copy was delivered to Mr. Murphy, the other to plaintiff; that the consideration for the lease was one dollar, but plaintiff had no dollar, and the other person present, who was a witness on the trial, offered plaintiff the dollar, which was accepted, the dollar being passed to him, which he in turn handed to Mr. Murphy, when Murphy passed it back to the witness who had "loaned" it to plaintiff. The witness testified that Murphy "got it (the dollar) across the table, and after a while why— he knew I was around there like I am today, not very much money—I think he slipped me the dollar before I went out, and I went off," and thus the dollar was im-

mediately returned to the place from which it came. It is conceded that the lease, if made, was made in the name of Murphy as lessor, and that Murphy had no interest in the lot, and never has had. Unfortunately he died before the case was tried, and his evidence could not be had, but it is said that the then owner of the paper title to the property was his sister, and he had the general management of her property. How this was is not clearly shown. All the testimony as to plaintiff having made any admissions against his interest, and that there was any lease ever made, is denied by him. He testified that no dollar was given him, and he signed no papers. Strict search has been made through the papers and effects of Mr. Murphy since his decease, but no lease of the kind referred to has been found, nor was such a lease ever recorded. So far as is shown by the evidence, such a lease has never been seen subsequent to the time it is alleged to have been made. At the time the lease is alleged to have been given by Mr. Murphy he not only was not the owner of the lot, but there is no proof in the record that he had legal authority to execute such a lease. It may be further observed that at that time plaintiff, by all the evidence upon the subject, had been in the possession of the property for at least 14 years, which was four years more than the statutory period of limitations. If his possession was adverse, the title had before that time become fully vested in him, and his acceptance of the lease or the payment of rent could not divest him of that title. *Martin v. Martin*, 76 Neb. 335, and cases there cited. See *Woodcock v. Unknown Heirs of Crosby*, 92 Neb. 723. It is elementary that where the title has become fully vested by disseizin so long continued as to bar an action, it cannot be divested by parol abandonment or relinquishment or by verbal declarations of the disseizor, nor by any other act short of what would be required in a case where his title was by deed. *School District v. Benson*, 31 Me. 381. We therefore conclude that from any point of view, whether a lease was made or not is not a material matter.

It must be apparent that the writ of possession offered in evidence, issued in a cause when Mr. Murphy was plaintiff and this plaintiff was defendant, with the return of the sheriff thereon, can have no effect upon the solution of this case. Murphy was not the owner of the land, had no interest in it, and, so far as is shown by this record, was not a proper party plaintiff. The rule of the code that every action must be prosecuted in the name of the real party in interest applies with as much force in forcible entry and detainer cases as in any other, but, even had that suit been prosecuted in the name of the real party in interest, the probative effect of the record offered in evidence could amount to little or nothing in this case, as the question of title could not be litigated nor tried therein, and the result could accomplish nothing more than had he voluntarily, without suit, removed himself, family and effects to other property. In that case if defendants, or any other, had taken possession, plaintiff could have ousted them by law on the ground that the title was in him.

The decree of the district court is reversed and the cause is remanded to that court, with directions to reinstate the case and enter a decree quieting plaintiff's title in the property as prayed for in the petition, taxing all costs to defendants.

                                            REVERSED.

BARNES, FAWCETT and HAMER, JJ., not sitting.