[No. 41128-8-II.   Division Two.   January 4, 2012.]

ROBERT NICKELL ET AL., *Appellants*, v. SOUTHVIEW HOMEOWNERS ASSOCIATION, *Respondent*.

44

*George S. Kelley*, for appellants.
*Annette T. Fitzsimmons*, for respondent.

¶1 HUNT, J. — Robert and Karen Nickell appeal the superior court's grant of summary judgment to the Southview Homeowners Association and its ruling that the Nickells' silence induced reliance by others and estopped the Nickells' adverse possession of an 18-foot-wide strip of land between their property and Southview's property. The Nickells argue that (1) by June 1995, they had acquired full title to the disputed strip by adverse possession; (2) the prescriptive easement "vacant lands doctrine" does not apply because their use of the disputed strip was permanent, not sporadic, and occurred on land undergoing suburban plat approval; (3) the "greenbelt" statute,[1] which prevents adverse possession of a designated greenbelt, does not apply because the Nickells had title to the disputed strip by June 1995 and the legislature did not enact the statute until 1997; and (4) the trial court improperly granted summary judgment based on estoppel because estoppel requires an admission, statement, or act, none of which occurred; the Nickells were merely silent and without knowledge of a boundary dispute; and because Southview had the same or superior knowledge of a boundary dispute and possibly "unclean hands,"[2] it had no right to rely on the Nickells' "delay"[3] in seeking to quiet title to the strip. In the alternative, the Nickells argue that, if equity controls and we impose a greenbelt easement on the strip, title should vest in them and Southview should compensate them for the easement's impact on their property value. We reverse and remand for further proceedings.

---

[1] RCW 36.70A.165.

[2] Br. of Appellant at 25.

[3] Br. of Appellant at 27.

## FACTS

### I. BOUNDARY DISPUTE

¶2 Robert[4] and Karen Nickell purchased their property in late March or early April 1989, moved onto the property immediately, and occupied it continuously. When they took possession, various shrubbery and trees demarked what appeared to be the eastern boundary of their property: Their groomed lawn met landscaped shrubbery, which abutted a thicket of blackberry bushes, timber, and brush; this landscaped area had been in place, and apparently maintained by the Nickells' predecessor, since at least 1985.[5] The Nickells maintained this landscaping, which included a row of bushes along what they believed to be their property's eastern boundary. When these bushes died in the mid to late 1990s, the Nickells installed an underground sprinkling system and replanted the same area with arborvitae hedges.

¶3 In 1993, Thomas and Carol Greetham applied for a preliminary plat to subdivide their land adjacent to and east of the Nickells' property; their application included a land survey. In 1994, Pierce County conducted a public hearing on the Greethams' application; Karen Nickell voiced her concern about the proposed plot size and stripping of trees. The Hearing Examiner's report described the site as located within a medium-intensity residential environment. The Hearing Examiner approved the proposed preliminary plat and site plan, known as Southview, subject to several conditions, including that "[t]he 25-foot buffer area along the west property line shall be replanted in

---

[4] Robert Nickell is now deceased, but the appellant continues to include both names and to refer to the Nickells in the plural "to avoid the potential for confusion." Br. of Appellant at 1. We adopt this approach.

[5] Washington State Department of Transportation photographs from 1985 show this landscaped demarcation.

accordance with a landscape plan which must be approved." Clerk's Papers (CP) at 47.

¶4 In late 2004 or early 2005, developer Randy Chopp, who had purchased the Greethams' property, entered the Nickells' land and informed them that (1) some of their landscaping was on his property, but "not to worry" because the County had designated it as greenbelt as a condition of plat approval; and (2) he planned to remove part of their lawn and plant vegetation. CP at 32. The Nickells were "flabbergasted" and questioned Chopp but did not object. CP at 32. Chopp removed a portion of the existing lawn on the landscaped area that he contended was his, and he installed a septic system[6] for one of the intended lots. Afterwards, the Nickells continued to maintain the landscaping in this area.

¶5 In July 2005, the Hearing Examiner gave final plat approval for the Southview subdivision, subject to two conditions, one of which required Southview to place an advisory note on the final plat indicating the existence of an "easement issue" with a different neighbor, which created the potential for future litigation. CP at 61. The County sent a copy of this final plat approval to all parties of record, including the Nickells, with instructions for aggrieved parties to seek reconsideration.

¶6 In 2008, a neighbor (and member of Southview Homeowners Association) came onto the Nickells' land and informed them that Southview's greenbelt extended to and included the arborvitae hedges that the Nickells had planted in the 1990s. The Nickells engaged the services of a professional land surveyor, who concluded that (1) as of November 2008, the disputed strip had been cultivated in the current manner and present location for 23 years; and

---

[6] The Nickells dispute Southview's claim of constructing two septic system reserve drain fields on the disputed land. Taking the facts in the light most favorable to the Nickells, the nonmoving party on summary judgment, we assume the presence of only one such drain field. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990).

(2) despite customary surveying practices, previous land surveys of the property included no notation of the Nickells' landscaping encroaching over the common boundary onto Southview's land.

## II. PROCEDURE

¶7 After informal resolution of the dispute failed, the Nickells brought a quiet title action against Southview. Southview moved for summary judgment dismissal of the Nickells' claims, arguing that (1) the property was vacant land and, thus, a presumption of permissive use applied; and (2) the doctrine of estoppel prevented the Nickells' adverse possession of the land because they did not object during the Southview platting process. The superior court granted summary judgment in favor of Southview, ruling that the doctrine of estoppel in pais applied and that the Nickells' silence had induced Southview's and its predecessors' reliance on their claims of ownership.[7]

## ANALYSIS

¶8 The Nickells argue that the superior court erred in granting summary judgment because (1) by June 1995, they had acquired full title to the disputed strip by adverse possession; (2) the prescriptive easement "vacant lands doctrine"[8] should not be imported here and does not apply

---

[7] More specifically, the superior court explained:

> I'm going to grant defendant's motion for summary judgment. I believe that there's clear and convincing evidence in this case that the doctrine of estoppel in pais applies. The *Dorward, Harlan,* and *Alcorn* cases support the contention that silence by the property owner is sufficient if it induces reliance. In this case, it induced reliance on the part of Chopp and developers of the adjacent property as well as other county officials who granted the plat, and so I'm going to grant summary judgment on that basis.

Verbatim Report of Proceedings at 24 (citing *Dorward v. ILWU-PMA Pension Plan,* 75 Wn.2d 478, 452 P.2d 258 (1969); *Thomas v. Harlan,* 27 Wn.2d 512, 178 P.2d 965 (1947); *Alcorn Trailer City v. Blazer,* 18 Wn. App. 782, 572 P.2d 15 (1977)).

[8] Reply Br. of Appellant at 15.

because their use of the land was permanent, not sporadic, and occurred on land undergoing suburban plat approval; and (3) RCW 36.70A.165, the greenbelt statute, did not bar their adverse possession of the disputed strip because the legislature did not enact the statute preventing adverse possession of a designated greenbelt until 1997, *after* they had completed their adverse possession period.

¶9 Southview responds that the superior court properly granted summary judgment because (1) the Nickells cannot show the element of hostility, defeating their adverse possession claim; (2) the presumption of permissive use from the "vacant lands doctrine"[9] applied, as demonstrated by adverse possession case law's frequent citation of the seminal case on the vacant land doctrine; and (3) RCW 36.70A.165, which prohibits adverse possession of a designated greenbelt, barred the Nickells' claim. The Nickells' arguments prevail.

## I. STANDARD OF REVIEW

¶10 We review summary judgment orders de novo, performing the same inquiry as the superior court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). The superior court properly grants summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Morin v. Harrell*, 161 Wn.2d 226, 230, 164 P.3d 495 (2007) (citing CR 56(c)).

¶11 In a summary judgment motion, the burden is on the moving party to demonstrate that summary judgment is proper. *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). We consider all the facts submitted and the reasonable inferences from them in the light most favorable to the nonmoving party. *Atherton*, 115 Wn.2d at 516. And we

[9] Br. of Resp't at 36.

resolve any doubts about the existence of a genuine issue of material fact against the party moving for summary judgment. *Atherton*, 115 Wn.2d at 516. "Summary judgment is appropriate only if, from all the evidence, reasonable persons could reach but one conclusion." *Lilly v. Lynch*, 88 Wn. App. 306, 312, 945 P.2d 727 (1997).

## II. Title by Adverse Possession

¶12 To establish a claim of adverse possession, the burden is on the claimant to prove by a preponderance of the evidence that the claimant's possession is (1) exclusive, (2) actual and uninterrupted, (3) open and notorious, and (4) hostile. *ITT Rayonier, Inc. v. Bell*, 112 Wn.2d 754, 757, 774 P.2d 6 (1989). Each of the necessary elements must have existed for 10 years. *ITT Rayonier*, 112 Wn.2d at 757 (citing RCW 4.16.020).[10] "A claimant can satisfy the open and notorious element by showing either (1) that the title owner had actual notice of the adverse use throughout the statutory period or (2) that the claimant used the land such that any reasonable person would have thought he owned it." *Riley v. Andres*, 107 Wn. App. 391, 396, 27 P.3d 618 (2001). Hostility requires "that the claimant treat the land as his own as against the world throughout the statutory period." *Chaplin v. Sanders*, 100 Wn.2d 853, 860-61, 676 P.2d 431 (1984). "[I]f the use of another's land is open, notorious and adverse, the law presumes knowledge or notice in so far as the owner is concerned." *Hovila v. Bartek*, 48 Wn.2d 238, 241-42, 292 P.2d 877 (1956).

¶13 When a person adversely possesses real property for 10 years, such possession ripens into an original title. *El Cerrito, Inc. v. Ryndak*, 60 Wn.2d 847, 855, 376 P.2d

---

[10] RCW 4.16.020(1):

For actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appears that the plaintiff, his or her ancestor, predecessor or grantor was seized or possessed of the premises in question within ten years before the commencement of the action.

528 (1963). Divestment of title does not occur differently or more easily to the person who acquires title passively by adverse possession than to the person who acquires title by deed. *See El Cerrito*, 60 Wn.2d at 855. Thus, once a person acquires title by adverse possession, he cannot divest his property interest by "parol abandonment,"[11] relinquishment, verbal declarations, or any other act short of what would be required had he acquired his title by deed. *Mugaas v. Smith*, 33 Wn.2d 429, 431, 206 P.2d 332 (1949) (quoting *Towles v. Hamilton*, 94 Neb. 588, 143 N.W. 935, 936 (1913)). A person who acquires title by adverse possession can convey it to another party without having had title quieted to him before the conveyance. *El Cerrito*, 60 Wn.2d at 855. The 10-year statute of limitations does not require the owner by adverse possession to have held the property in an adverse manner continuously up to the time he seeks to quiet title by lawsuit. *El Cerrito*, 60 Wn.2d at 855. Instead, he may bring his action any time after he has held possession adversely for 10 years. *El Cerrito*, 60 Wn.2d at 855.

¶14 The Nickells claim that they completed 10 years of adverse possession of the disputed strip by June 1995. Southview counters that we should apply a presumption of permissive use based on the "vacant lands doctrine" from prescriptive easement case law and deny the Nickells' claim based on their failure to show the adverse possession element of hostility. Br. of Resp't at 28, 30 (quoting *Drake v. Smersh*, 122 Wn. App. 147, 154, 89 P.3d 726 (2004)).

¶15 Our Supreme Court articulated the "vacant lands doctrine" in *Northwest Cities Gas Co. v. Western Fuel Co.*, 13 Wn.2d 75, 86, 123 P.2d 771 (1942). *Drake*, 122 Wn. App. at 153 n.16. It held that, to prevail on a prescriptive easement claim over wild, unoccupied, prairie lands where

---

[11] In Washington, a person may convey real estate, or any interest thereof, only by written deed. Any attempt to convey property without such writing is generally invalid. *See* RCW 64.04.010; *Kesinger v. Logan*, 113 Wn.2d 320, 325-26, 779 P.2d 263 (1989).

land is "vacant, open, [unenclosed, and] unimproved," the claimant must first rebut a presumption of permissive use. *Nw. Cities Gas*, 13 Wn.2d at 85-86. Southview's argument ignores that (1) the Hearing Examiner described the site as located within a medium-intensity residential environment, not vacant land; and (2) although the law disfavors prescriptive easements, no such disfavor applies to adverse possession of actual land. *Nw. Cities Gas*, 13 Wn.2d at 83; *Kunkel v. Fisher*, 106 Wn. App. 599, 603 n.12, 23 P.3d 1128, *review denied*, 145 Wn.2d 1010 (2001). Southview further argues that a presumption of permissive use protects landowners from claims arising by "casual trespassers." Br. of Resp't at 32. But Southview ignores that the Nickells openly, continuously, and exclusively treated the disputed strip as their own property; they were not casual trespassers.

¶16 The Nickells presented evidence that, as of November 2008, the disputed strip had been landscaped and maintained at its present location for 23 years. As part of the preliminary plat application, Southview's predecessors in interest had conducted a survey in 1993, which should have put the owners on notice of the Nickells' landscaping improvement encroaching over the common boundary. Construing these facts and the reasonable inferences from them in the light most favorable to the Nickells, we hold that they satisfy the elements of adverse possession, including the element of hostility. *Atherton*, 115 Wn.2d at 516. Recognizing that by June 1995, the Nickells had thus acquired title to the disputed strip by adverse possession, we next consider whether the greenbelt statute, RCW 36.70A.165, or the estoppel doctrine divested the Nickells of their adverse possession title.

### III. No Divestment of Title by Adverse Possession

¶17 Southview next argues that RCW 36.70A.165[12] barred the Nickells' adverse possession of the disputed strip as of June 1995. The legislature, however, did not enact the statute preventing adverse possession of a designated greenbelt until 1997; and this statute does not provide for retroactive application. *See* Laws of 1997, ch. 429, § 41.[13] Therefore, RCW 36.70A.165 neither barred the Nickells' claim nor divested them of their title by adverse possession.[14]

¶18 The doctrine of equitable estoppel rests on the principle that a person "shall not be permitted to deny what he has once solemnly acknowledged." *Arnold v. Melani*, 75 Wn.2d 143, 147, 437 P.2d 908, 449 P.2d 800 (1968). " '[W]here a person, by his acts or representations, causes another to change his position or to refrain from performing a necessary act to such person's detriment or prejudice, the person who performs such acts or makes such representations is precluded from asserting the conduct or forbearance of the other party to his own advantage.' " *In re Marriage of Barber*, 106 Wn. App. 390, 396, 23 P.3d 1106 (2001) (internal quotation marks omitted) (quoting *Hartman v. Smith*, 100 Wn.2d 766, 769, 674 P.2d 176 (1984)).

---

[12] RCW 36.70A.165 provides:

The legislature recognizes that the preservation of urban greenbelts is an integral part of comprehensive growth management in Washington. The legislature further recognizes that certain greenbelts are subject to adverse possession action which, if carried out, threaten the comprehensive nature of this chapter. Therefore, a party shall not acquire by adverse possession property that is designated as a plat greenbelt or open space area or that is dedicated as open space to a public agency or to a bona fide homeowner's association.

[13] Statutes generally operate prospectively; unless remedial in nature, we do not apply statutes retroactively. *Miebach v. Colasurdo*, 102 Wn.2d 170, 180-81, 685 P.2d 1074 (1984).

[14] Moreover, the plat did not designate the disputed strip as greenbelt until 2005, 10 years after the Nickells had completed their 10-year adverse possession of the strip.

Before we can apply estoppel in pais or equitable estoppel, three things must occur:

> (1) an admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.

*Thomas v. Harlan*, 27 Wn.2d 512, 518, 178 P.2d 965 (1947); *see also Dorward v. ILWU-PMA Pension Plan*, 75 Wn.2d 478, 484, 452 P.2d 258 (1969). Courts disfavor equitable estoppel; thus, the reviewing court requires the aggrieved party to prove every element with clear, cogent, and convincing evidence, and also to show detrimental reliance. *Barber*, 106 Wn. App. at 396. Here, the burden is on Southview to establish the estoppel elements by "clear and convincing" evidence. *Thomas*, 27 Wn.2d at 518. It fails to carry this burden.

### 1. Silence or act inconsistent with claim of title

¶19 The Nickells argue that they were merely silent and committed no act to prompt estoppel. Southview responds that the Nickells allegedly "surrendered" the land to Chopp in 2004 or 2005 and that this act of surrendering constituted an "act," satisfying the first element of the estoppel test. Br. of Resp't at 13, 17. Under some circumstances, Washington courts consider intentionally deceptive silence to be an act for estoppel purposes:

> "Mere silence, without positive acts, to effect an estoppel, must have operated as a fraud, must have been intended to mislead, and itself must have actually misled. The party keeping silent must have known or had reasonable grounds for believing that the other party would rely and act upon his silence. The burden of showing these things rests upon the party invoking the estoppel."

*Codd v. Westchester Fire Ins. Co.*, 14 Wn.2d 600, 606-07, 128 P.2d 968 (1942) (internal quotation marks omitted) (quoting

*Consol. Freight Lines v. Groenen,* 10 Wn.2d 672, 677-78, 117 P.2d 966 (1941)). Such silence does not rise to the level of an act inconsistent with the Nickells' claim of title here.

¶20 In this case, the evidence shows that, although the Nickells had adversely possessed the disputed strip for 10 years by June 1995, at least until late 2004, they had done so unaware of any other's claim of ownership. In late 2004 or early 2005, new adjacent landowner Chopp entered the Nickells' land and told them for the first time (1) that their landscaping extended onto his property, (2) that he planned to remove part of their landscaping in order to install a septic system, and (3) "not to worry" because the County had designated the strip as greenbelt. CP at 32. Although the Nickells were "flabbergasted," they did not prevent Chopp from installing a septic system on the strip and removing part of their lawn; and they returned to caring for the disputed strip as their own property. CP at 32.

¶21 Southview characterizes these events as "deceptive" without showing any evidence of deception or intent to deceive or to mislead by the Nickells.[15] Br. of Resp't at 11. Nor does Southview point to any evidence that the Nickells ever agreed to waive their right to bring a later action to quiet title to the disputed strip, or that they otherwise conveyed away their already-acquired adverse possession title to Southview. In short, Southview does not show that the Nickells were silent with any intent to defraud; and the evidence is undisputed that, despite their alleged "silence," the Nickells continued their "positive acts" of ongoing landscaping and use of the disputed strip. *Codd,* 14 Wn.2d at 607. Thus, Southview fails to establish the first element of the estoppel test: "an admission, statement, or act inconsistent with the claim afterwards asserted." *Thomas,* 27 Wn.2d at 518.

---

[15] Southview criticizes Karen Nickell for having failed to assert her adverse possession of the disputed strip to the Hearing Examiner at the 1994 plat approval hearing. But Southview fails to show that she had any knowledge of the boundary dispute at that time.

## 2. Reliance

¶22 Southview argues that the trial court properly applied the estoppel doctrine because Southview, Pierce County, and individual homeowners[16] all relied on the Nickells' "surrender" of the disputed strip to Chopp and the Nickells' "delay" in seeking court action to quiet title to the disputed strip. Br. of Resp't at 13, 22. The Nickells argue that they never "surrendered" the strip to Chopp and that Southview had no right to rely on their "delay"[17] in seeking to quiet title because they (the Nickells) had no more, and likely less, knowledge of a boundary dispute than Southview had. Reply Br. of Appellant at 4 n.2. The record supports the Nickells' position.

¶23 "[A]bsent fraud or misrepresentation, estoppel runs in favor only of those who have reasonably relied on another's conduct or declarations." *Leonard v. Wash. Emp'rs, Inc.*, 77 Wn.2d 271, 281, 461 P.2d 538 (1969). "Not all those who rely upon another's conduct or statements may raise an estoppel. Rather, it is only those who have a *right to rely* upon such acts or representations." *Leonard*, 77 Wn.2d at 280. " 'Full knowledge of the facts is essential to create an estoppel by silence or acquiescence.' " *Codd*, 14 Wn.2d at 607 (internal quotation marks omitted) (quoting

---

[16] In addition to criticizing the Nickells for failing to alert the Hearing Examiner about their adverse possession claim at the 1994 plat approval hearing, Southview faults the Nickells for not bringing an action to quiet title in 2005, when the Hearing Examiner's final plat approval included the condition that Southview note on the face of the plat an easement issue and accompanying potential for future litigation involving a *different* neighbor, not the Nickells.

Although Chopp's intrusion in late 2004 to early 2005 may have put the Nickells on initial notice of a boundary dispute, Southview's argument attempts to place on the Nickells all responsibility for communicating the boundary dispute to the Hearing Examiner, despite the Hearing Examiner's condition placing the onus on "[t]he applicant," namely Southview. CP at 61. Furthermore, Southview's argument attempts to elevate the legal significance of final plat approval such that the lack of an adverse possession claim notation on the plat somehow forfeited the Nickells' adverse possession claim.

[17] Br. of Resp't at 22.

*Consol. Freight Lines*, 10 Wn.2d at 677). "[M]ere silence or acquiescence will not operate to work an estoppel where the other party has constructive notice of public records which disclose the true facts." *Waldrip v. Olympia Oyster Co.*, 40 Wn.2d 469, 476, 244 P.2d 273 (1952). "Where both parties can determine the law and have knowledge of the underlying facts, estoppel cannot lie." *Lybbert v. Grant County*, 141 Wn.2d 29, 35, 1 P.3d 1124 (2000).

¶24 Here, in late 2004 or early 2005, Chopp knew that the Nickells' mature landscaping encroached on the recorded boundary of the adjacent land that he had purchased. As a new owner and a land developer, Chopp presumably had access to the 1993 land survey that his predecessors had conducted. Arguably, Chopp's assurance that the Nickells need not "worry" about his activities delayed their seeking to quiet title until 2008, when a Southview Homeowners Association member contacted them about the strip, only then making a lawsuit necessary. CP at 32.

¶25 Even assuming that Chopp's entrance onto their property in late 2004 or early 2005 put the Nickells on notice of his claim of ownership, the Nickells sought to quiet title well within the 10-year statute of limitations following their completed 10-year adverse possession period. RCW 4.16.020.[18] In similar circumstances, Division Three of our court concluded:

> [T]he Roys[, who claimed title by adverse possession,] did not deem a lawsuit necessary until [three years after threatening a lawsuit]. Bearing in mind the period of time during which a person may legally bring a lawsuit after a cause of action arises regarding real property, *failure to sue immediately after an*

---

[18] RCW 4.16.020(1):

For actions for the recovery of real property, or for the recovery of the possession thereof; and no action shall be maintained for such recovery unless it appears that the plaintiff, his or her ancestor, predecessor or grantor was seized or possessed of the premises in question within ten years before the commencement of the action.

*assertion of a possessory interest in land does not amount to a
representation that a claim has been abandoned.* Moreover, the
Meyerses' subsequent improvements and conveyances despite
actual notice of the Roys' claim were undertaken without the
requisite "right to rely". Estoppel was therefore not established.

*Roy v. Cunningham*, 46 Wn. App. 409, 416, 731 P.2d 526
(1986) (emphasis added), *review denied*, 108 Wn.2d 1018
(1987). Adopting Division Three's rationale, we similarly
hold that Southview has not established a right to rely on
the Nickells' "delay"[19] in pursuing a quiet title action as a
representation that they had abandoned their claimed
ownership of the strip by adverse possession.

¶26 Southview's having failed to show the first two
elements of estoppel, we do not address the third. Because
Southview cannot establish estoppel, we hold that the trial
court improperly granted Southview summary judgment on
this ground.

## IV. EQUITY

¶27 Based on our Supreme Court's decision in *Proctor v.
Huntington*, 169 Wn.2d 491, 238 P.3d 1117 (2010), *cert.
denied*, 131 S. Ct. 1700 (2011), Southview argues that we
should affirm summary judgment here because "[r]ote
enforcement of real estate doctrine, without accommodation
for harsh effect, is contrary to equity." Br. of Resp't at 25.
Again, we disagree.

¶28 First, Southview apparently claims "harsh effect" by
*incorrectly* asserting that the Nickells seek Southview's
ejectment from the disputed strip. Br. of Resp't at 25.
According to the Nickells, they "have not requested eject-
ment." Reply Br. of Appellant at 19. Nor does the record
suggest such requested ejectment or any other "harsh
effect"[20] on Southview flowing from the Nickells' gaining

---

[19] Br. of Resp't at 22.

[20] Br. of Resp't at 25.

title to the strip by adverse possession.[21] Second, South-view's reliance on *Proctor* is misplaced because, unlike the circumstances here, *Proctor* addresses only actual eject-ment; "adverse possession and estoppel claims [were] not before [the Supreme Court] on review." *Proctor*, 169 Wn.2d at 495 n.2.

¶29 We reverse summary judgment for Southview and remand for further proceedings.

VAN DEREN and JOHANSON, JJ., concur.

Review denied at 174 Wn.2d 1018 (2012).

---

[21] On the contrary, the record reflects that the Nickells allowed Chopp to construct part of a subdivision septic tank on the strip and that, apparently, they have not demanded its removal.