# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| ERIC O. RASMUSSEN, M.D., and JANICE M. RASMUSSEN, and the marital community comprised thereof,<br><br>         Respondents/Cross Appellants,<br><br>   v.<br><br>RODNEY RICH and SANDRA RICH, and the marital community comprised thereof,<br><br>         Appellants/Cross Respondents. | No.  49433-7-II<br><br><br><br>UNPUBLISHED OPINION |

WORSWICK, P.J. — Rodney and Sandra Rich appeal the trial court's summary judgment order quieting title in certain property.  The Riches argue that the trial court erred in granting Eric O. Rasmussen, M.D., and Janice M. Rasmussen's motion for summary judgment because the Riches presented sufficient evidence to support their affirmative defenses of equitable estoppel and laches and their counterclaim for mutual recognition and acquiescence.  The Rasmussens cross appeal, arguing that the trial court erred in granting the Riches' motion for reconsideration and denying attorney fees and costs to the Rasmussens.

We reverse in part the trial court's order granting the Rasmussens' motion for summary judgment on their quiet title claim and remand for further proceedings because there is a genuine issue of material fact regarding whether the Riches' equitable estoppel defense defeats the Rasmussens' claim.  We affirm the trial court's order granting summary judgment dismissal of the Riches' laches defense and mutual recognition and acquiescence counterclaim, and we affirm

the trial court's order granting the Riches' motion for reconsideration, which denied attorney fees and costs to the Rasmussens.

FACTS

In 1993, the Riches purchased a parcel of property on Bainbridge Island. The Riches' property is a waterfront lot that consists of a bluff, where their home sits, and a hillside leading to the beach. Soon after they purchased their property, the Riches met with their neighbors, the Rasmussens, to discuss the boundary line between their properties. Mr. Rich asked Mr. Rasmussen where the property line was on the beach. Mr. Rasmussen stated that "he did not know exactly where it was" because it had not been surveyed, but "he believed that it was at the end of his deck." Clerk's Papers (CP) at 76. The Riches and the Rasmussens also agreed that a concrete wall that the Riches planned to build next to laurel hedges on the bluff between their properties would serve as the true boundary line.

The end of the Rasmussens' deck cannot be seen from the top of the bluff. The Riches asked the Rasmussens if they should get a survey to determine the true boundary line between their properties, and the Rasmussens answered in the negative. The Riches believed that their conversation with the Rasmussens established that the boundary line between their properties would run from the Rasmussens' deck on the beach to the concrete wall on the bluff.

Soon after purchasing their property, the Riches built a concrete wall that abutted the laurel hedge on the bluff. The hillside between the concrete wall on the bluff and the Rasmussens' deck on the beach is approximately 75 feet in length and consisted of overgrown blackberries and ivy. There were no property markers in the overgrown vegetation, and the Riches did not otherwise physically mark the purported boundary line on the hillside.

2

The Riches began making improvements on the hillside in 2007. The Riches built a concrete deck and concrete retaining wall on the beach in 2008. The Riches also built terraces along the hillside between 2010 and 2013. Later in 2013, the Rasmussens obtained a survey of the true boundary line of their property. The survey revealed that the Riches' concrete deck and retaining wall on the beach extended over 12 feet into the Rasmussens' property, and the terracing on the hillside extended over 9 feet into the Rasmussens' property. After obtaining the survey, the Rasmussens and the Riches engaged in negotiations with their attorneys regarding the Riches' encroachments. The negotiations were unsuccessful.

In 2015, the Rasmussens filed a complaint to quiet title to the disputed area between the Riches' purported boundary line and the true boundary line between their properties. The Riches pleaded the affirmative defenses of equitable estoppel and laches. The Riches also filed a counterclaim for mutual recognition and acquiescence.

The Rasmussens later filed a motion for summary judgment, arguing that the Riches failed to present sufficient evidence to support their mutual recognition and acquiescence counterclaim. The trial court granted the Rasmussens' motion for summary judgment, finding that the Rasmussens were entitled to an order quieting title to the disputed area. The trial court also dismissed the Riches' mutual recognition and acquiescence counterclaim with prejudice and awarded the Rasmussens attorney fees and costs under RCW 7.28.083(3).

The Riches filed a motion for reconsideration, arguing, among other things, that the trial court erred in awarding the Rasmussens attorney fees and costs under RCW 7.28.083(3) because the statute authorizes an award of fees for only adverse possession actions. The trial court granted the Riches' motion for reconsideration and vacated its award of fees and costs. The

Riches appeal the trial court's summary judgment order quieting title in the disputed property,

and the Rasmussens appeal the trial court's order granting the Riches' motion for reconsideration

and denying attorney fees and costs to the Rasmussens.

ANALYSIS

The Riches argue that the trial court erred in granting the Rasmussens' motion for

summary judgment because they presented sufficient evidence to support their counterclaim and

pleaded affirmative defenses. In their cross appeal, the Rasmussens argue that the trial court

erred in granting the Riches' motion for reconsideration of the trial court's award of attorney fees

and costs to the Rasmussens under RCW 7.28.083(3).

We reverse in part the trial court's order granting the Rasmussens' motion for summary

judgment on their quiet title claim and remand for further proceedings because there is a genuine

issue of material fact regarding whether the Riches' equitable estoppel defense defeats the

Rasmussens' claim. We affirm the trial court's order granting summary judgment dismissal of

the Riches' laches defense and mutual recognition and acquiescence counterclaim, and we affirm

the trial court's order granting the Riches' motion for reconsideration on the issue of attorney

fees and costs.

I. SUMMARY JUDGMENT

The Riches argue that the trial court erred in granting the Rasmussens' motion for

summary judgment because they presented sufficient evidence to support their equitable estoppel

affirmative defense, mutual recognition and acquiescence counterclaim, and laches affirmative

defense. We hold that there is a genuine issue of material fact regarding whether the Riches'

equitable estoppel defense defeats the Rasmussens' quiet title claim, but we affirm summary

4

judgment dismissal of the Riches' laches defense and dismissal of their mutual recognition and acquiescence counterclaim.

A.     *Legal Principles*

We review a trial court's order granting summary judgment de novo. *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c). When determining whether a genuine issue of material fact exists, we consider all facts and reasonable inferences in the light most favorable to the nonmoving party. *Ranger Ins. Co.*, 164 Wn.2d at 552. "A material fact is one on which the litigation's outcome depends in whole or in part." *TT Props. v. City of Tacoma*, 192 Wn. App. 238, 245, 366 P.3d 465, *review denied*, 185 Wn.2d 1036 (2016).

"Summary judgment is subject to a burden-shifting scheme." *Ranger Ins. Co.*, 164 Wn.2d at 552. The moving party bears the burden of demonstrating that there are no genuine issues of material fact. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005). A party may move for summary judgment by alleging that the nonmoving party failed to present sufficient evidence to support its case and showing "'those portions of the record, together with the affidavits, if any, which . . . demonstrate the absence of a genuine issue of material fact.'" *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 351, 144 P.3d 276 (2006) (quoting *Guile v. Ballard Cmty. Hosp.*, 70 Wn. App. 18, 22, 851 P.2d 689 (1993)). If the moving party satisfies its burden, the nonmoving party must present evidence that rebuts the moving party's contentions and demonstrates that material facts are in dispute.

*Vallandigham*, 154 Wn.2d at 26. If the nonmoving party fails to meet its burden, summary judgment is proper. 154 Wn.2d at 26.

B.     *Equitable Estoppel Defense*

The Riches argue that the trial court erred in granting the Rasmussens' motion for summary judgment because they presented sufficient evidence to support their equitable estoppel affirmative defense. We hold that there is a genuine issue of material fact regarding whether the Riches' equitable estoppel defense defeats the Rasmussens' quiet title claim. Accordingly, the trial court erred in granting summary judgment dismissal of the Riches' equitable estoppel defense.

The doctrine of equitable estoppel provides that a party may be prevented from setting up his legal title when he has, through his actions, words, or silence, led another to take a position in which the assertion of the legal title would be contrary to equity. *Sorenson v. Pyeatt*, 158 Wn.2d 523, 539, 146 P.3d 1172 (2006). The elements of equitable estoppel are: "'(1) an admission, statement or act inconsistent with a claim afterwards asserted, (2) action by another in [reasonable] reliance upon that act, statement or admission, and (3) injury to the relying party from allowing the first party to contradict or repudiate the prior act, statement or admission.'" *Lybbert v. Grant County*, 141 Wn.2d 29, 35, 1 P.3d 1124 (2000) (alteration in original) (quoting *Board of Regents v. City of Seattle*, 108 Wn.2d 545, 551, 741 P.2d 11 (1987)). The burden is on the party asserting estoppel to establish the elements by clear, cogent, and convincing evidence. *Nickell v. Southview Homeowners Ass'n*, 167 Wn. App. 42, 54, 271 P.3d 973 (2012).

Here, there is a question as to whether the Riches reasonably relied on the Rasmsussens' statement concerning the purported boundary line between the two properties, and this fact

6

determines the outcome of the Riches' equitable estoppel defense. Accordingly, there is a genuine issue of material fact regarding whether equitable estoppel defeats the Rasmussens' quiet title claim. Therefore, the trial court erred in granting the Rasmussens' motion for summary judgment dismissal of the Riches' equitable estoppel defense.

C.      *Laches Defense*

The Riches also argue that the trial court erred in granting the Rasmussens' motion for summary judgment because they presented sufficient evidence to support their laches affirmative defense. We hold that the trial court did not err in summarily dismissing this defense.

The equitable doctrine of laches is the implied waiver of an action arising from knowledge of existing conditions and acquiescence in them. *Felida Neighborhood Ass'n v. Clark County*, 81 Wn. App. 155, 162, 913 P.2d 823 (1996). The doctrine of laches consists of two elements: (1) inexcusable delay and (2) prejudice to the other party from such delay. *Clark County Pub. Util. Dist. No. 1 v. Wilkinson*, 139 Wn.2d 840, 848, 991 P.2d 1161 (2000). "It is only appropriate to apply laches when a party, knowing his rights, takes no steps to enforce them and the condition of the other party has *in good faith become so changed that he cannot be restored to his former state*." *Brost v. L.A.N.D., Inc.*, 37 Wn. App. 372, 375-76, 680 P.2d 453 (1984) (alteration in original).

Shortly after purchasing the property next to the Rasmussens, the Riches sought to determine the boundary line. Mr. Rich "asked where the property line was [on the beach], and [Mr. Rasmussen said] he did not know exactly where it was. It had not been surveyed . . . but he believed that it was at the end of his deck." CP at 76. The Riches first began making improvements to the disputed area in 2007. The Riches began cutting into the hillside to build

7

terraces from the beach to the bluff but ended this project soon after. In 2008, the Riches built a concrete deck and retaining wall on the beach. The Riches then resumed building terraces along the hillside in 2010 and completed building the terraces in 2013.

Later in 2013, the Rasmussens obtained a survey of the true boundary line of their property. The survey revealed that the Riches' concrete deck and retaining wall on the beach extended over 12 feet into the Rasmussens' property, and the terracing on the hillside extended over 9 feet into the Rasmussens' property. After obtaining the survey, the Rasmussens and the Riches engaged in negotiations with their attorneys. The negotiations were unsuccessful, and the Rasmussens filed their complaint to quiet title in 2015.

It is improper to apply the equitable doctrine of laches to the facts in this case. The record does not show that the Rasmussens inexcusably delayed their action to quiet title to the disputed property. The Rasmussens did not have knowledge of their true boundary line until they obtained a survey in 2013. After obtaining the survey, the Rasmussens entered into negotiations with the Riches. Negotiations were unsuccessful, and the Rasmussens filed a lawsuit to quiet title to the disputed area. The Rasmussens became aware of their property rights upon obtaining the survey and did not inexcusably delay in initiating this cause of action. Because the Riches fail to establish that the Rasmussens inexcusably delayed in filing their claim, they fail to show that they are entitled to judgment as a matter of law under the doctrine of laches. As a result, the trial court did not err in summarily dismissing the defense of laches.

D.     *Mutual Recognition and Acquiescence Counterclaim*

The Riches also argue that the trial court erred in granting the Rasmussens' motion for summary judgment because they presented sufficient evidence to support their mutual recognition and acquiescence counterclaim. We disagree.

Property boundaries that are at odds with the true boundary, as established by a survey, may be established through the doctrine of mutual recognition and acquiescence. *Lamm v. McTighe*, 72 Wn.2d 587, 591, 434 P.2d 565 (1967). The doctrine of mutual recognition and acquiescence permits neighbors to adjust their property boundaries by oral acts or their acts on the ground. *Green v. Hooper*, 149 Wn. App. 627, 639, 205 P.3d 134 (2009).

A party claiming title to land under the mutual recognition and acquiescence doctrine must prove:

> (1) that the boundary line between two properties was "certain, well defined, and in some fashion physically designated upon the ground, *e.g.*, by monuments, roadways, fence lines, etc."; (2) that the adjoining landowners, in the absence of an express boundary line agreement, manifested in good faith a mutual recognition of the designated boundary line as the true line; and (3) that mutual recognition of the boundary line continued for the period of time necessary to establish adverse possession (10 years).

*Merriman v. Cokeley*, 168 Wn.2d 627, 630, 230 P.3d 162 (2010) (quoting *Lamm*, 72 Wn.2d at 593). The party must prove these elements by clear, cogent, and convincing evidence. 168 Wn.2d at 630. To meet this standard of proof, the evidence must show that the ultimate facts are highly probable. 168 Wn.2d at 630-31.

To establish the first element of a mutual recognition and acquiescence claim, a party must show that the purported property boundary line is "'certain, well defined, and in some fashion physically designated upon the ground.'" 168 Wn.2d at 630 (quoting *Lamm*, 72 Wn.2d

9

at 593). While generally there is no requirement that the purported boundary line be an uninterrupted tangible object, like a fence, "more than isolated markers are required to prove a clear and well-defined boundary." 168 Wn.2d at 631. Instead, a fence, pathway, or another monument or combination of monuments must clearly divide the two parcels of property. 168 Wn.2d at 631. If the boundary line is insufficiently defined, a party's mutual recognition and acquiescence claim fails. *See* 168 Wn.2d at 631.

Shortly after the Riches purchased their property in 1993, they had a discussion with the Rasmussens regarding the boundary line between their two properties. The Rasmussens stated that they believed their boundary line ran against the edge of their deck on the beach. The Riches and the Rasmussens also agreed that the property line on the bluff would run against the Riches' future concrete wall. The Riches did not physically demarcate the purported boundary line between the concrete wall and the Rasmussens' deck, and the Rasmussens' deck cannot be seen from the top of the bluff. The hillside between the concrete wall and the Rasmussens' deck is approximately 75 feet in length and consisted of overgrown blackberries and ivy.

The Riches argue that the boundary line was certain and well defined because it was affixed by two monuments—the end of the concrete wall on the bluff and the end of the Rasmussens' deck on the beach. Despite this, the boundary line was not certain and well defined because these two isolated monuments are insufficient to establish a boundary line in an overgrown area.

In *Merriman*, the Washington Supreme Court determined that "three widely spaced markers . . . set in a thicket of blackberry bushes, ivy, and weeds, did not constitute a clear and well-defined boundary." 168 Wn.2d at 632. The *Merriman* court noted that, historically,

appellate courts have declined to find a certain and well-defined boundary where there is no fence or defining point of cultivation or where there is only a retaining wall, and no other monuments, that extends a short distance into the disputed property. 168 Wn.2d at 631-32 (citing *Scott v. Slater*, 42 Wn.2d 366, 368-69, 255 P.2d 377 (1953), *overruled on other grounds by Chaplin v. Sanders*, 100 Wn.2d 853, 862 n.2, 676 P.2d 431 (1984); *Green*, 149 Wn. App. at 642).

*Merriman* is instructive here. The hillside between the Riches' concrete wall and the Rasmussens' deck is approximately 75 feet in length. It is undisputed that the hillside was filled with overgrown vegetation. The Riches also stated that they did not physically demarcate the boundary line through the overgrowth. Only the concrete wall on the bluff and the Rasmussens' deck on the beach demarcated the Riches' purported boundary line. Yet these monuments were widely spaced and extend a relatively short distance into the disputed area. As a result, no monument or combination of monuments clearly divided the Riches' property from the Rasmussens' property. Because no more than isolated markers designated the purported boundary line, there is no genuine issue of material fact regarding the certainty of the Riches' purported boundary line. Accordingly, the Riches failed to present sufficient evidence to support their mutual recognition and acquiescence counterclaim. Thus, the trial court did not err in granting the Rasmussens' motion for summary judgment dismissal of the Riches' counterclaim.[1]

---

[1] Because we determine that the Riches failed to present sufficient evidence to show that the purported boundary line was certain, well defined, and physically designated, we do not reach the remaining elements of their mutual recognition and acquiescence counterclaim. However, we note that there can be no express agreement regarding a purported boundary line when the monuments that demarcate the line do not exist at the time of the alleged agreement.

II. CROSS APPEAL: MOTION FOR RECONSIDERATION

On cross appeal, the Rasmussens argue that the trial court erred in granting the Riches'
motion for reconsideration of the trial court's award of attorney fees and costs to the
Rasmussens. Specifically, the Rasmussens argue that they were entitled to an award of attorney
fees and costs under RCW 7.28.083(3). We disagree.

We review a trial court's decision regarding a motion for reconsideration for an abuse of
discretion. *Landstar Inway, Inc. v. Samrow*, 181 Wn. App. 109, 120, 325 P.3d 327 (2014). A
trial court abuses its discretion when its decision is manifestly unreasonable or based upon
untenable grounds. 181 Wn. App. at 121.

Generally, a trial court will not award attorney fees unless fees are authorized by contract,
statute, or a recognized ground in equity. *Durland v. San Juan County*, 182 Wn.2d 55, 76, 340
P.3d 191 (2014). RCW 7.28.083(3) provides that "[t]he prevailing party in an action asserting
title to real property by adverse possession may request the court to award costs and reasonable
attorneys' fees."

In granting the Rasmussens' motion for summary judgment, the trial court awarded the
Rasmussens reasonable attorney fees and costs under RCW 7.28.083(3).[2] The Riches filed a
motion for reconsideration of the trial court's fee award, arguing that the doctrines of adverse
possession and mutual recognition and acquiescence are separate theories that involve different
elements. As a result, the Riches argued, RCW 7.28.083(3) did not authorize an award of
attorney fees and costs to a party prevailing on a mutual recognition and acquiescence claim.

---

[2] RCW 7.28.083(3) provides that the prevailing party in an adverse possession claim may request
reasonable attorney fees.

The trial court granted the Riches' motion for reconsideration, determining that RCW 7.28.083(3) did not authorize an award of attorney fees or costs to the Rasmussens.

The doctrine of mutual recognition and acquiescence is considered to supplement adverse possession. *Green*, 149 Wn. App. at 639 (citing 17 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON PRACTICE: REAL ESTATE: PROPERTY LAW § 8.21, at 544 (2d ed. 2004)). Despite this, mutual recognition and acquiescence is an alternate claim to adverse possession, and the two doctrines "are separate and independent theories and claims." 149 Wn. App. at 639. Mutual recognition and acquiescence is based on implied or express boundary agreements while adverse possession requires the possessor to appropriate another's property. *Compare Lamm*, 72 Wn.2d at 591, *with Lloyd v. Montecucco*, 83 Wn. App. 846, 852-53, 924 P.2d 927 (1996).

RCW 7.28.083(3) authorizes an award for attorney fees and costs to the prevailing party in an adverse possession action. Because mutual recognition and acquiescence is a separate theory and claim from adverse possession that requires a showing of different elements, it cannot be said to be an adverse possession action for purposes of RCW 7.28.083(3). Accordingly, RCW 7.28.083(3) does not authorize an award of attorney fees and costs to the prevailing party in a mutual recognition and acquiescence claim. Therefore, the trial court did not abuse its discretion in granting the Riches' motion for reconsideration because its decision was based on tenable grounds and was not manifestly unreasonable.

## CONCLUSION

We reverse in part the trial court's order granting the Rasmussens' motion for summary judgment on their quiet title claim and remand for further proceedings because there is a genuine issue of material fact regarding whether the Riches' equitable estoppel defense defeats the

No. 49433-7-II

Rasmussens' claim. We affirm the trial court's order granting summary judgment dismissal of the Riches' laches defense and mutual recognition and acquiescence counterclaim. We also affirm the trial court's order granting the Riches' motion for reconsideration and denying attorney fees and costs to the Rasmussens.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, P.J.

We concur:

Lee, J.

Sutton, J.

14